FILED

2023 Nov-10  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **Alaska Air Group, Inc.,** *et al.* <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **Anthem, Inc.,** *et al.* <br><br> **Defendants.** | **Case No.: 2:21-cv-01209-RDP** |
| **JetBlue Airways Corporation,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **Anthem, Inc., f/k/a WellPoint, Inc. d/b/a Anthem Blue Cross Life and Health Insurance Company,** *et al.*, <br><br> **Defendants.** | **Case No. 2:22-cv-00558-RDP** |
| **Bed Bath & Beyond,** *et al.* <br><br> **Plaintiffs** <br><br> **v.** <br><br> **Anthem, Inc.,** *et al.* <br><br> **Defendants.** | **Case No. 2:22-cv-01256-RDP** |

## PLAINTIFFS' INITIAL BRIEF IN SUPPORT OF THEIR REQUEST FOR PRODUCTION OF DEFENDANTS' MDL EXPERT REPORTS

2693159.1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................................1

ARGUMENT ..........................................................................................................................3

I.     THE EXPERT REPORTS CONTAIN HIGHLY RELEVANT INFORMATION .............3

II.    THE EXPERT REPORTS ARE DISCOVERABLE ............................................................6

       A.    WHERE CLAIMS, DEFENSES, OR ISSUES OVERLAP, EXPERT REPORTS FROM A PRIOR CASE ARE DISCOVERABLE .................................................................6

       B.    PLAINTIFFS ARE NOT SEEKING PREMATURE DISCLOSURE OF DEFENDANTS' EXPERT OPINIONS IN THIS CASE ..................................................................8

       C.    THE REPORTS ARE PROPORTIONAL TO THE NEEDS OF THE CASE .............................9

       D.    THE REPORTS ARE NOT WORK PRODUCT ...............................................................10

III.   THE BALANCING ANALYSIS FAVORS PRODUCTION DURING FACT DISCOVERY .........................................................................................................11

       A.    THE *COLONIAL BANCGROUP* BALANCING TEST STRONGLY FAVORS PRODUCTION OF THE REPORTS .....................................................................................................12

       B.    THE PROBATIVE VALUE OF THE REPORTS DURING FACT DISCOVERY FAVORS PRODUCTION SOONER RATHER THAN LATER .........................................................12

       C.    FAIRNESS REQUIRES THAT THE REPORTS BE PRODUCED IMMEDIATELY .................16

IV.   THE REPORTS ARE ADMISSIBLE .............................................................................17

       A.    THE REPORTS ARE ADMISSIBLE AS STATEMENTS OF A PARTY OPPONENT .............17

       B.    THE REPORTS ARE ADMISSIBLE AS STATEMENTS THAT DEFENDANTS "ADOPTED OR BELIEVED TO BE TRUE" ...................................................................................19

CONCLUSION.....................................................................................................................20

CERTIFICATE OF SERVICE ................................................................................................27

# TABLE OF AUTHORITIES

CASES                                                                                           PAGE(S)

*Abstrax, Inc. v. Dell, Inc.*,
   2:07-CV-221-DF, 2009 WL 10677355 (E.D. Tex Oct. 9, 2009) ..................................... 19, 20

*Adamson Apparel, Inc. v. Saks, Inc.*,
   No. 05-B-2514-S, 2006 WL 8436479 (N.D. Ala. Oct. 5, 2006) ...........................................10

*Akridge v. Alfa Mut. Ins. Co.*,
   1 F.4th 1271 (11th Cir. 2021) .....................................................................................5

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 12-cv-0630, 2013 WL 3246094 (N.D. Cal. June 26, 2013).............................................7

*Bell v. Swift & Co.*,
   283 F.2d 407 (5th Cir. 1960) .....................................................................................10

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) ...............................................................................18 n.8

*Brown v. Overhead Door. Corp.*,
   No. 06-cv-50107, 2008 WL 1924885 (N.D. Ill. Apr. 29, 2008)............................................7

*Chicago Tribune v. Bridgestone Firestone*,
   263 F.3d 1304 (11th Cir. 2001) ...................................................................................11

*Collins v. Wayne Corp.*,
   621 F.2d 777 (5th Cir. 1980) ...............................................................................18, 19

*Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*,
   No. 2:11-cv-746-WKW, 2016 WL 9687001 (M.D. Ala. Jan. 22, 2016)...........1, 2, 7, 8, 11, 12

*Degen v. United States*,
   517 U.S. 820 (1996)...................................................................................................5

*Dering v. Serv. Experts All., LLC*,
   No. 1:06-cv-00357, 2007 WL 4299968 (N.D. Ga. Dec. 6, 2007) ..........................................12

*Endotach LLC v. Cook Med. Incorp.*,
   No. 1:13-cv-01135, 2014 WL 12753789 (S.D. Ind. May 16, 2014) ........................................5

*Expeditors Int'l of Washington, Inc. v. Vastera, Inc.*,
   No. 04-cv-0321, 2004 WL 406999 (N.D. Ill. Feb. 26, 2004)...............................................7, 8

iii

*Gibson v. Credit Suisse AG*,
   No. 1:10-cv-00001, 2016 WL 11546364 (D. Idaho Jan. 8, 2016)............................................5

*High Point SARL v. Sprint Nextel Corp.*,
   No. 09-2269, 2012 WL 1533213 (D. Kan. Apr. 30, 2012)....................................................... 7

*Hussey v. State Farm Lloyds Ins. Co.*,
   216 F.R.D. 591 (E.D. Tex. 2003)..........................................................................................8

*In re Abbott Labs Norvir Antitrust Litig.*,
   No. 4:04-cv-01511, ECF No. 356 (N.D. Cal. Aug. 8, 2007) ....................................................9

*In re Blue Cross Blue Shield Antitrust Litig. (MDL No. 2406)*,
   2:13-cv-20000-RDP, 2017 WL 588445 (N.D. Ala. Feb. 14, 2017) ................................19 n.9

*Infernal Tech., LLC v. Microsoft Corp.*,
   No. 2:18-cv-00144, 2019 WL 5388442 (E.D. Tex. May 3, 2019) ...........................................7

*Kirk v. Raymark Indus., Inc.*,
   61 F.3d 147 (3d Cir. 1995)..........................................................................................18 n.7

*Kreitman v. Florida Dept. of Corrections*,
   4:20cv371-MW/MJF, 2020 WL 12188711 (N.D. Fla, Nov. 30, 2020)..................................19

*Loftis v. Ramos*,
   No. 16-cv-2300-MMA, 2018 WL 1444859 (S.D. Cal. Mar. 20, 2018)....................................9

*Mathis v. Exxon Corp.*,
   302 F.3d 448 (5th Cir. 2002) ...............................................................................................18

*Morgan v. Saehaesung Ala., Inc.*,
   No. 3:12-cv-816, 2014 WL 1239240 (M.D. Ala. Mar. 25, 2014) ..........................................18

*N5 Tech. LLC v. Capital One N.A.*,
   56 F. Supp. 3d 755 (E.D. Va. 2014) ................................................................................18 n.7

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978).............................................................................................................3

*Parkervision Inc., v. Qualcomm Inc.*,
   No. 3:11–cv–719–J–37, 2013 WL 3771226 (M.D. Fla. July 17, 2013) ...................................7

*Republic of Ecuador v. Hinchee*,
   741 F.3d 1185 (11th Cir. 2013) ...........................................................................................10

iv

*Romero v. Drummond Co., Inc.*,
    480 F.3d 1234 (11th Cir. 2007) ...................................................................11

*Sagness v. Duplechin*,
    No. 4:16CV3152, 2017 WL 1183988 (D. Neb. Mar. 29, 2017)........................................9 n.6

*Sherrod v. Williams*,
    No. 3:14-cv-454, 2018 WL 8805194 (S.D. Ohio July 6, 2018) ............................................. 8

*Simuro v. Shedd*,
    No. 2:13-cv-30, 2014 WL 5776149 (D. Vt. Nov. 6, 2014) .......................................................5

*Taylor v. Farm Credit of N. Fla. ACA*,
    No. 21-1307, 2022 WL 4493044 (11th Cir. Sept. 28, 2022) .....................................9

*United States v. Alabama*,
    No. 2:20-cv-01971-RDP, 2023 WL 7154111 (N.D. Ala. Oct. 31, 2023)................................9

*United States v. Ala. Power Co.*,
    773 F. Supp. 2d 1250 (N.D. Ala. 2011) ..................................................................18

*United States v. Ala. Power Co.*,
    730 F.3d 1278 (11th Cir. 2013) ................................................................18

*U.S. v. Anthem, Inc.*,
    No. 16-1493 (ADJ 2-18-17) (D.D.C. 2017)..........................................................1 n.1

*Whole Foods Market Group, Inc. v. Wical Ltd.*,
    1:17-cv-01079-RCL, 2019 WL 6910168 (D.D.C. Oct. 22, 2019)............................................20

**STATUTES AND RULES**                                                                        **PAGE(S)**

Fed. R. Civ. P. 26(b)(1)................................................................................1, 9, 12, 17

Fed. R. Evid. 801(d)(2) ...........................................................................15, 17, 19

2693159.1

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

On October 19, 2023, after months of negotiations and numerous attempts to resolve the dispute through Special Master Gentle, this Court heard preliminary arguments on Plaintiffs' Request for Production of nine of the Defendants' MDL Expert reports.[1]  During the hearing, this Court recognized, and Defendants appeared to agree, that the reports are discoverable.  (Tr. at 14, 64).[2]  Defendants, however, argued that under *Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, No. 2:11-cv-746-WKW, 2016 WL 9687001 (M.D. Ala. Jan. 22, 2016), "a balancing analysis" is required and that one must "consider the need… against the burden, [and] against the prejudice."  (Tr. at 14).  This Court ordered the parties to submit briefs (*Alaska Air* Doc. 272; *JetBlue* Doc. 347; *BBB* Doc. 249) addressing whether the reports would be appropriate for fact discovery under the *Colonial BancGroup* balancing test.  (Tr. at 22-23).  As set forth below, the MDL expert reports are discoverable and should be produced.

First, the reports are relevant.  Defendants did not seriously dispute relevance at the October 19th hearing, but they have not fully conceded the issue either.  In order to remove any doubt, Plaintiffs set forth the relevant factual issues addressed by the expert reports.

Second, expert reports from a prior case are discoverable where, as here, the claims, defenses, or issues from the prior case overlap.  Contrary to Defendants' contentions, Plaintiffs are

---

[1] Plaintiffs initially requested the production of ten MDL expert reports, but have reduced the number to nine reports submitted by seven expert witnesses.  Plaintiffs have also requested that Anthem produce the expert reports it sponsored in *U.S. v. Anthem, Inc.*, No. 16-1493 (ADJ 2-18-17) (D.D.C. 2017).  Anthem has refused to produce its expert reports but the parties have yet to discuss the issue with Special Master Gentle.  Plaintiffs hope that the Court's ruling on the MDL expert reports will provide sufficient guidance for the parties to resolve their dispute over the expert reports being withheld by Anthem.

[2] The transcript of the Oct. 19, 2023 (Tr. at ____) is attached hereto as Ex. A.

not seeking an improper preview of the Defendants' expert reports *in this case*; the discovery sought is proportional to the needs of this case; and the MDL expert reports are not work product.

Third, production of Defendants' MDL expert reports is warranted under the court's analysis in *Colonial BancGroup*, which is not a unique balancing test, but rather the standard Rule 26 analysis.  Here, the probative value of the reports easily outweighs the "small burden" of producing them (*Colonial BancGroup* at *2) and Plaintiffs would be prejudiced by not receiving the reports during fact discovery.  Further, it would be inequitable to deny the immediate production of the reports, as Defendants already have the report and deposition of *Alaska Air* and *JetBlue* Plaintiffs' expert, Dr. David Dranove, from *U.S. v. Anthem, Inc*.  That report addresses many of the issues, including relevant market, market power and anticompetitive effects, which are all relevant to this case.

Lastly, Plaintiffs—to the extent necessary—address the issue of the admissibility of the reports.  Although this Court recognized that admissibility is more properly decided at the motion in limine stage, (Tr. at 10), Defendants (wrongly) insist that it should be decided now.  (Tr. at 13).  In the event this Court chooses to address admissibility at this early stage, the controlling law of the Eleventh Circuit compels the conclusion that prior expert reports are admissible when offered by an adversary.

Thus, Plaintiffs request that this Court order Defendants to produce the nine reports[3] immediately or, at the latest, 90 days before the close of fact discovery.

---

[3] The nine MDL reports are those submitted by: Dr. Lawrence Wu (summary at MDL ECF 2488); two reports by Dr. David Evans (summaries at MDL ECF 2487 and 2652); two reports by Dr. Erin Trish (summary at MDL ECF 2486 and 2555-2); Dr. Janusz Ordover (summary at MDL ECF 2489) (Dr. Ordover is deceased and obviously will not be re-designated as an expert by the Defendants); Dr. Robert Topel (summary at MDL ECF 2653); Dr. Kevin Murphy (summary at MDL ECF 2555-1); and Ms. Nancy Litwinski (summary at MDL ECF 2644).

2693159.1

## ARGUMENT

## I.    THE EXPERT REPORTS CONTAIN HIGHLY RELEVANT INFORMATION

Parties may obtain discovery regarding any nonprivileged matter that is relevant and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

For the purposes of discovery, relevance is defined broadly to include any matter that "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  The publicly available summaries of the nine MDL expert reports filed by Defendants in the MDL[4] confirm that the prior reports are replete with factual information that bears directly on important issues in this case, including, *inter alia*, (i) whether the relevant market is a two-sided transaction platform (as Defendants claim); (ii) whether National ASO accounts and fully insured accounts are close substitutes  and compete in the same relevant market ; and (iii) whether Defendants' rules and practices cause anticompetitive effects, such as an increase in the fees paid by National ASO Accounts.  More specifically, the requested reports address the following highly relevant subjects:

- Dr. Lawrence Wu states that large National Accounts (such as the Plaintiffs) "require nationwide health services and only consider health plans that compete throughout much broader geographic region," whereas smaller groups can use local and regional plans (MDL ECF 2488 at ¶ 14).  That view is consistent with Plaintiffs' contention that there is a national market for large multistate employers and inconsistent with Defendants' contention in *this case* that local or regional plans can compete for National ASO accounts. Dr. Wu also asserts that national ASO plans and fully insured plans are not in the same relevant market (*id.* at ¶ 15).

- Dr. David Evans states that "Blue Plans are two-sided platforms with significant indirect network effects" and compete in a two-sided relevant market (MDL ECF 2652 at pp. 2, 5). He further states that Defendants' rules do not cause an increase in subscriber prices, (*id.* at p. 6) and that the Blue Card (which Plaintiffs do not challenge) increases economic efficacy (*id*. at 7).  Finally, Dr. Evans asserts that providers charge lower prices if an insurer

---

[4] For the Court's convenience and reference, Plaintiffs attach those summaries here as Ex. B-1 through B-9.

can deliver large plans (such as the ASO Plaintiffs) with a high number of members (*id.* at p. 3-5).

- Dr. Erin E. Trish states that delivering National Accounts with a large number of members makes the Blues very attractive to providers, (MDL ECF 2486, ¶ 8), which suggests that the Blues would compete vigorously against each other for ASO National Account business if their rules did not prohibit such competition. Dr. Trish further states that, where there is more competition among insurers for subscribers, the prices paid by the subscribers go down (*id.* at ¶¶ 5, 9). Finally, Dr. Trish asserts that fully insured accounts and ASO accounts are "distinct products" (*id.* at ¶ 7), *i.e.*, they are not in the same relevant market.

- Dr. Kevin Murphy states that the challenged rules do not reduce competition or harm subscribers and that there is no economic evidence that Blues would have entered the ESA's of other Blues with either Blue or Green products in the absence of those rules. (MDL ECF 2555-1, ¶¶ 1-5). Like Dr. Evans, Dr. Murphy states that the Blue Card creates efficiencies and allows the Blues to compete for large multi-state accounts. Dr. Murphy opines that the only competition for large multi-state accounts is among one Blue and the three other companies that offer "nationwide coverage" (*id.* at ¶ 11).

- Dr. Janusz Ordover asserts that, in the absence of challenged rules, entry by Green or Blue entities into Alabama is unlikely. (MDL ECF 2489, ¶ 2). Dr. Ordover also asserts that empirical evidence – which is not identified in the summary, but which presumably is identified in his report – shows that a lower market share for an insurer (due to market entry by another insurer) does not necessarily drive provider prices up (due to greater competition) and sometimes drives provider prices down (*id.* at ¶¶ 17-18) (and in a two-sided interconnected market the lower provider prices would result in lower subscriber prices).

- Dr. Robert Topel states that "[p]rices paid to providers are not systematically lower in putative markets with greater insurer concentration than in markets with less concentration." (MDL ECF 2653 at p. 2). According to Defendants' summary of Dr. Topel's report, "the relationship between market concentration and prices paid to providers is effectively zero." (*Id.* at 3). If Dr. Topel is correct that "an insurer's market share has a negligible impact on the prices it pays for provider services," (*id.* at 4), then a Blue's increased market share due to its ESA does not push provider prices down or produce cost savings that can be passed on to the subscriber side of the purported two-sided market so as to offset the increase in subscriber prices caused by the ESA's and the lack of Blue-on-Blue competition.

- Nancy Litwinski addresses Defendants' profitability; the proper manner for calculating their profitability; and whether retained earnings should be included in profits. (MDL ECF 2644).

Defendants cannot reasonably assert that these reports do not contain information that is relevant to the claims, defenses, and issues in these actions, or that they are unlikely to lead to the discovery

4

of admissible evidence.  In that regard, the reports will also assuredly aid in Plaintiffs' efforts to obtain relevant financial data concerning Defendants' profitability and streamline the identification of relevant structured data.

In fact discovery, "[a] civil litigant is generally entitled to 'any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence.'" *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quoting *Degen v. United States*, 517 U.S. 820, 825-26 (1996)).  That rule plainly applies to the expert reports at issue here, and there is no legitimate basis to restrict production to—as Defendants suggest—the prior reports of the experts they re-designate in this case, and only at the time of their expert disclosures.  Regardless, Plaintiffs are seeking relevant factual information about the Defendants' "***prior litigation positions***," not their expert reports in this case.  *Endotach LLC v. Cook Med. Incorp.*, No. 1:13-cv-01135, 2014 WL 12753789, at *3 (S.D. Ind. May 16, 2014) (emphasis added) (holding that expert reports from prior related litigation "shall be produced").  As another court has explained:

> Plaintiffs' request need not be one that actually seeks admissible evidence.  It is sufficient if the request could lead to discoverable evidence.  If there were similar opinions expressed in the [MDL], whether admitted into evidence or not, those opinions could lead to discoverable information that would be potentially relevant to the instant matter, whether for estoppel, for cross-examination, or for some other use.  It does not matter whether the authors of the expert reports actually testified at trial in [the MDL].

*Gibson v. Credit Suisse AG*, No. 1:10-cv-00001, 2016 WL 11546364, at *3 (D. Idaho Jan. 8, 2016) (ordering production of expert reports from prior litigation, notwithstanding the fact that defendants utilized different experts in the two cases).  *See also Simuro v. Shedd*, No. 2:13-cv-30, 2014 WL 5776149, at *9 (D. Vt. Nov. 6, 2014) (prior expert reports are relevant and discoverable, in part, because the reports can be used for impeachment).

Accordingly, Defendants' offer to produce only the prior reports of the experts they re-designate in this case, and then only at the time their expert reports are due in this case, is not a solution. Defendants, of course, are unlikely to re-designate their MDL experts in this case as most of them took positions that are inconsistent with the positions Defendants now assert. And whether Defendants identify the same experts or not does not change the relevance and discoverability of the information contained within the reports Defendants served on their adversaries in the MDL. The factual matters and positions, not the names of the individuals who discuss them, render the reports relevant documents that must be produced. Furthermore, the production of the prior reports after fact discovery in this case has closed will come too late for Plaintiffs to conduct fact discovery based on the contents of the prior reports. *See infra* Section III.

## II.      THE EXPERT REPORTS ARE DISCOVERABLE

### A.      WHERE CLAIMS, DEFENSES, OR ISSUES OVERLAP, EXPERT REPORTS FROM A PRIOR CASE ARE DISCOVERABLE

The expert reports are not only relevant, but they are also discoverable. The facts and legal issues from the MDL significantly overlap with the opt-out cases. For instance, Defendants have confirmed *in this case* that many of their contentions in this case (1) are the same or substantially the same as issues raised in the MDL and (2) were addressed in the MDL by Defendants' experts. (*See* Ex. C (Plaintiffs' July 28, 2023 Letter) at 2-3 (observing several of Defendants' affirmative defenses raised issues addressed in the MDL by Defendants' experts); Ex. D (Defendants' August 7, 2023 Letter) at 1 (confirming those defenses are of the same nature in this case as they were in the MDL)). The caselaw holds that where claims, defenses, or issues overlap that expert material from a prior case must be produced in discovery.

6

In *Colonial BancGroup*, the plaintiff sought defendant's expert material from a prior case. Judge Moorer granted a motion to compel because the prior litigation "involve[d] 'many of the very same issues that are at issue here.'"  2016 WL 9687001, at *2.  That is also true here, as the claims and issues in this case overlap significantly with the claims and issues in the MDL.[5]  The caselaw overwhelmingly agrees with Judge Moorer's view.  *See e.g., Infernal Tech., LLC v. Microsoft Corp.*, No. 2:18-cv-00144, 2019 WL 5388442, at *2 (E.D. Tex. May 3, 2019) (ordering production of infringement expert reports from previous litigation because "Plaintiffs' prior litigation positions regarding the same claims asserted in this case are relevant to the claims and defenses in this case"); *Parkervision Inc., v. Qualcomm Inc*., No. 3:11–cv–719–J–37, 2013 WL 3771226, at *1-2 (M.D. Fla. July 17, 2013) ("[P]rior expert deposition transcripts and prior trial testimony transcripts ... [are] discovery materials [that] fall within the ambit of Rule 26(b)(1) for general fact discovery."); *Apple Inc. v. Samsung Elecs. Co*., No. 12-cv-0630, 2013 WL 3246094, at *22 (N.D. Cal. June 26, 2013) (ordering production of documents from other litigation involving same technology, including expert reports); *High Point SARL v. Sprint Nextel Corp*., No. 09-2269, 2012 WL 1533213, at *9 (D. Kan. Apr. 30, 2012) ("High Point has met its burden of showing the relevancy of the expert reports and deposition testimony from damages experts in [related] litigation."); *Brown v. Overhead Door. Corp*., No. 06-cv-50107, 2008 WL 1924885, at *1-2 (N.D. Ill. Apr. 29, 2008) (ordering production of expert reports from other cases); *Expeditors Int'l of Washington, Inc. v. Vastera, Inc*., No. 04-cv-0321, 2004 WL 406999, at *2-4 (N.D. Ill. Feb. 26, 2004) (ordering production of prior expert reports); *Sherrod v. Williams*, No. 3:14-cv-454, 2018 WL 8805194, at *2 (S.D. Ohio July 6, 2018) ("[T]he previous expert reports are discoverable

---

[5] Defendants have described one of the opt-out ASO cases as a "subscriber action that involves…numerous identical fact allegations" and claims that "directly track" the MDL claims. (*MDL No. 2406* Doc. 541 (Notice of Potential Tag-Along Action) at 2, 4).

because they are relevant to the general subject matter of this case and do not pose an undue burden upon either of the Defendants."); *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 594 (E.D. Tex. 2003) ("[Prior] expert reports are discoverable because they are relevant to the general subject matter of this case and are likely to lead to the discovery of admissible evidence.").

**B.     PLAINTIFFS ARE NOT SEEKING PREMATURE DISCLOSURE OF DEFENDANTS' EXPERT OPINIONS IN THIS CASE**

Defendants have argued that Plaintiffs' request for the MDL expert reports is an improper attempt to get a preview of Defendants' expert opinions *in this case*. (Tr. At 12-16). That is simply not true. As an initial matter, Defendants have repeatedly stated that they may not even re-designate in this case the experts they used in the MDL.

Regardless, Plaintiffs are not seeking an early preview of what Defendants' experts *will* say in this case. Instead, Plaintiffs are entitled to know what Defendants' experts *have* said and relied upon in prior cases involving very similar claims, defenses, and issues. Plaintiffs' position is fully supported by *Colonial BancGroup*, where the court explicitly affirmed the propriety of such discovery:

> PWC's argument as to the Uniform Scheduling Order's prohibition on discovery of expert opinions in this case until the expert reports are due on June 30, 2016, also fails. Indeed, the Court views the discovery of PWC's expert deposition testimony in other cases as fact discovery in this case…

2016 WL 9687001 at *2. Judge Moorer further held that expert material from a prior case "falls within the ambit of Rule 26(b)(1) for general fact discovery." *Id.* As a result, he rejected the defendant's arguments that disclosure of expert opinions from prior litigation would give the plaintiff an "unfair advantage of knowing" what defendant's experts might say in the current litigation. *Id.* at *1-2.[6] Judge Moorer's analysis is equally applicable here.

---

[6] Defendants have repeatedly cited *Sagness v. Duplechin*, No. 4:16CV3152, 2017 WL 1183988, at *3 (D. Neb. Mar. 29, 2017) and *In re Abbott Labs Norvir Antitrust Litig.*, No. 4:04-cv-01511,

### C.   THE REPORTS ARE PROPORTIONAL TO THE NEEDS OF THE CASE

Plaintiffs' request for Defendants' MDL expert reports is clearly proportional to the needs of this case.  Under Federal Rule of Civil Procedure 26(b)(1), "[p]roportionality concerns include the importance of the requested discovery, the parties' relative access to the information, and 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Taylor v. Farm Credit of N. Fla. ACA*, No. 21-1307, 2022 WL 4493044, at *3 (11th Cir. Sept. 28, 2022) (quoting Fed. R. Civ. P. 26(b)(1)); *see also United States v. Alabama*, No. 2:20-cv-01971-RDP, 2023 WL 7154111, at *3 (N.D. Ala. Oct. 31, 2023).  Accordingly, "parties must conduct a cost-benefit analysis weighing the importance of the issue to the outcome of the case, the amount at stake in the case, the parties' resources, and their relative access to the information." *Loftis v. Ramos*, No. 16-cv-2300-MMA, 2018 WL 1444859, at *2 (S.D. Cal. Mar. 20, 2018).

Here, the "proportionality" test is easily met.  The expert reports address critical issues in this case – relevant market, market power, and the anticompetitive effects.  The importance of that discovery plainly outweighs any cost or burden placed on Defendants.  Indeed, there is zero burden on Defendants, as the reports are in their possession and can easily be produced at the push of a button. *See Bell v. Swift & Co.*, 283 F.2d 407, 409 (5th Cir. 1960) ("The [discovery] rules are in the interest of the administration of justice and transcend in importance mere inconvenience to a party litigant.").

---

ECF No. 356, at 2 (N.D. Cal. Aug. 8, 2007) for the proposition that parties may not use fact discovery to force expert disclosures prior to a court-imposed deadline.  Neither case is on point—in both, the issue was whether a party may discover expert opinions developed in the *current* litigation in advance of expert disclosure dates. *Sagness*, 2017 WL 1183988, at *3 (denying motion to compel requesting opposing party to "[i]dentify each person whom you expect to call as an expert witness at trial and set forth the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."); *In re Abbott Labs Norvir Antitrust Litig.*, No. 4:04-cv-01511, at 2.  The issue in this case, by contrast, is whether expert reports from a prior litigation are discoverable.

9

Defendants' argument against production is thus reduced to the fact that they simply do not want Plaintiffs to have the opportunity to conduct fact discovery based on the contents of the reports. That argument does not even address proportionality, and is nothing more than an attempt to block discovery because it will harm their defense of the case. The purpose of discovery is to require disclosure of all relevant information so that the resolution of a civil action "may be based on a full and accurate understanding of the true facts." *Adamson Apparel, Inc. v. Saks, Inc.*, No. 05-B-2514-S, 2006 WL 8436479, at *8 (N.D. Ala. Oct. 5, 2006). Defendants' objection serves only to thwart that purpose.

### D.     THE REPORTS ARE NOT WORK PRODUCT

Defendants assert that the reports are "work product" that should not be produced. (Tr. at 18). Generally, the disclosure of *draft* expert reports is barred by the work-product doctrine, but that only applies to *drafts*, not to *final* expert reports previously submitted in a related litigation. As noted by the Eleventh Circuit, the drafters of Rule 26 made a "deliberate choice in Rules 26(b)(4)(B) and (C) to extend work-product protection to *only* draft expert reports and attorney-expert communications." *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1191 (11th Cir. 2013) (emphasis added). The drafters "easily could have also extended work-product status to other testifying expert materials," but they did not, reflecting a "calculated decision not to extend work-product protection" to final reports. *Id.* at 1191-92.

Defendants' use of the reports at issue further confirms that they are not work product. Defendants have already produced the reports to the MDL Plaintiffs, and summaries of the reports have been publicly filed. At least five of the reports were cited by Defendants in various motions filed in the MDL on major decisional issues such as class certification, summary judgment, and whether the challenged conduct is subject to the per se rule. (Ex. E (Chart of Defendants' Citations to Their MDL Expert Reports)). This is not undisclosed "trial preparation" material. These reports

10

have been used by Defendants and disclosed to their adversaries to assert factual positions on the record in support of their contentions and defenses.

Nor does Eleventh Circuit law regarding public access to sealed court filings transform Defendants' MDL reports into "work product" or otherwise support Defendants' position. "Documents filed in connection with motion to compel discovery are not subject to the common-law right of access, but material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234 (11th Cir. 2007) (cleaned up) (citing *Chicago Tribune v. Bridgestone Firestone,* 263 F.3d 1304, 1312-13 (11th Cir. 2001)).  *See also* MDL ECF No. 2406 at 3 (citing *Romero* to overrule Defendants' objections to unsealing depositions that were not privileged).  Although there appears to be good cause for unsealing the reports based on the common-law right of access, the analysis is even easier here because Plaintiffs do not even seek to unseal the reports.  Rather, Plaintiffs will use the reports solely for the purposes of this litigation and pursuant to the confidentiality protocols provided by the Protective Order entered in these cases, which are materially equivalent to the protective order in the MDL.

## III.    THE BALANCING ANALYSIS FAVORS PRODUCTION DURING FACT DISCOVERY

Defendants have cited *Colonial BancGroup* for the proposition that under a balancing analysis their MDL expert reports should not be produced.  (Tr. at 14).  Defendants are mistaken. The balancing test applied in *Colonial BancGroup*—which is nothing more than the standard Rule 26 analysis—strongly favors production of the reports as their probative value significantly outweighs the minimal burden of producing them.  The probative value of the reports also favors their production now so that their contents can be subjected to fact discovery.  Finally, the

11

balancing of the equities strongly favors the immediate production of the reports, as Defendants already have the highly relevant prior expert report of Plaintiff expert, Prof. David Dranove.

**A.    THE *COLONIAL BANCGROUP* BALANCING TEST STRONGLY FAVORS PRODUCTION OF THE REPORTS**

In *Colonial BancGroup,* Judge Moorer held that in the Eleventh Circuit the appropriate way to determine whether expert reports from a prior litigation are discoverable is to apply the "traditional balancing of the probative value to the plaintiffs against the burden placed upon the responding party."  *Id.* at *2 (emphasis added) (quoting *Dering v. Serv. Experts All., LLC*, No. 1:06-cv-00357, 2007 WL 4299968, at *2 (N.D. Ga. Dec. 6, 2007)).  Judge Moorer recognized this "traditional…balancing of the probative value of the information against the burden and expense of production" is the test set forth Fed. R. Civ. P. 26(b)(1).  *Colonial BancGroup* at *3.  Under that test, the balance clearly favors immediate production of the reports for the reasons previously stated: i) the reports are highly probative, directly address the critical fact issues that are central to the current litigation, including relevant market, market power and anticompetitive effects; ii) the burden of production on Defendants is negligible; and, iii) the law favors full disclosure in discovery and a disposition on the merits. (*See* pp. 3-9, *supra*).

**B.    THE PROBATIVE VALUE OF THE REPORTS DURING FACT DISCOVERY FAVORS PRODUCTION SOONER RATHER THAN LATER**

At the status conference, this Court requested that Plaintiffs briefly describe how they would use Defendants' prior expert reports in fact discovery.  (Tr. at 22).  Although Plaintiffs are at a disadvantage in this exercise because they do not know everything contained in the reports, Plaintiffs submit the following description of hypothetical interrogatories, requests for production, and 30(b)(6) witness questions that demonstrate how the reports could be used in fact discovery:

The reports are undoubtedly replete with specific facts, not set forth in the summaries, that document the basis for the factual conclusions reached by the experts.  Plaintiffs want to ask

Defendants' fact witnesses whether this factual detail is accurate, whether the experts' conclusions can be fairly drawn from the facts cited, and whether there are other inconsistent facts. Depending on the answers, Plaintiffs are likely to pursue updated discovery for at least some of the factual material. This is particularly true of the data sets on which the experts rely.

For example, Dr. Wu states that ASO products and fully insured products do not compete against each other in the same relevant market and that large employers require "nationwide" coverage. (MDL ECF 2488 at ¶¶ 14-15). If Dr. Wu is correct, then local and regional companies do not compete for the business of national ASO plans. The summary of Dr. Wu's report does not indicate what facts or data Dr. Wu relies on to draw his conclusions. Plaintiffs want to know what those facts and data sets are, so that Plaintiffs can ask Defendants' fact witnesses whether those facts were and still are accurate and whether the data is reliable for that purpose. Plaintiffs would likely want to update that data by RFP or subpoena. Plaintiffs would also ask Defendants' fact witnesses whether Dr. Wu's conclusions can be fairly drawn from the facts and data cited – and why or why not.

The summary of Dr. Evans' report states that the Blues are two-sided platforms and that the prices paid to providers and by subscribers are interrelated. (MDL ECF 2487 at 2-5; MDL ECF 2652 at 3-5). Dr. Evans' summary states that he analyzed certain unidentified data sets that were also analyzed by the Class expert. Plaintiffs want to discover what data Dr. Evans analyzed. Is it Defendants' data or third-party data? Is it reliable? Can it be used to draw the conclusions that Dr. Evans draws? In the event it is reliable, Plaintiffs will want to obtain it through subpoena or RFP. Dr. Evans' summary also states that the Blue Card is procompetitive and drives prices down and output and quality up and makes the Blues more efficient competitors. (MDL ECF 2487 at 6). The summary does not indicate what facts and data Dr. Evans relies on for these

13

propositions.  Plaintiffs want to discover these facts and data, update it where necessary, and ask Defendants' fact witnesses if the facts and data are reliable, whether those facts support Dr. Evans' conclusions, and whether they agree with his analysis.

Dr. Ordover states that entry by a Blue into another Blue's ESA is unlikely and that if entry did occur, the entrant would cherry pick certain accounts.  (MDL ECF 2489 at ¶¶ 2, 4).  Plaintiffs want to explore the factual basis for that statement and determine in discovery the criteria for which accounts would be "cherry picked" and whether the Plaintiffs would be candidates to be "cherry picked" (thereby adding to the competition for Plaintiffs' business).  (MDL ECF 2489 at 2-3).  Dr. Ordover also states that based on empirical analysis of Blue data that the effect of entry on both sides of the two-sided market "varies substantially" with local conditions.  (*Id.* at ¶ 7).  Plaintiffs want to discover what data Dr. Ordover analyzed to draw conclusions and ask whether Defendants' fact witnesses agree that the data is reliable for that purpose.  Plaintiffs also want to discover what factors cause the effect of entry to vary and how those factors apply to Plaintiffs.

If a Blue entered the ESA of another Blue, the market share of the incumbent would likely go down.  Dr. Topel, however, states that he has reviewed the data analyzed by the Class expert and that it "shows that the relationship between market concentration and prices paid to providers is effectively 0."  (MDL ECF 2653 at 3).  If that is true, then entry by a Blue into another Blue's ESA will not drive provider prices down and there will be no cost reduction that can be offset against the price increase the ASO's pay due to the elimination of Blue-on-Blue competition for their business.  Plaintiffs want to discover what data Dr. Topel analyzed; whether it is reliable; and whether it supports his conclusions.  Plaintiffs may want to update such data.

Plaintiffs will similarly want to explore the factual and data basis for conclusions drawn by the other MDL experts.  Dr. Murphy concludes that the Blue Card allows the Blues to better

14

compete for large multi-state accounts and that such accounts can look to only four competitors for a bid – one Blue and three other national competitors.  (MDL ECF 2555 at ¶ 11).  Dr. Trish concludes from "empirical economics that increased competition for subscribers" drives subscriber side prices down (MDL ECF 2486 at ¶ 5) and Ms. Litwinski addresses whether Defendants are excessively profitable when their financial data is properly analyzed (MDL ECF 2644).

Plaintiffs further expect that the reports will aid in streamlining the resolution of discovery matters, in particular their long ongoing dialogue with Defendants concerning the production of Defendants' financial and structured data.  The MDL expert reports assuredly will reference relevant datasets, data fields, and financial documents that will better enable Plaintiffs to have focused discussions with Defendants concerning the data and financial information needed here.

Plaintiffs also need the reports so that they can lay a proper foundation for their admissibility into evidence.  Under Fed. R. Evid. 801(d)(2)(B), (C), and (D) the reports are admissible as statements of a party opponent if 1) Defendants manifested a belief in the truth of the statements therein, 2) the statements were made by a person authorized to make the statements or 3) were made by an agent within the scope of his/her authority.  (*See* Section IV *supra*). Plaintiffs are entitled to ask Defendants whether they or their counsel knew of any of the contents of the reports; whether they would have submitted summaries of the reports if they did not believe them to be true; whether they would have cited the reports in briefs to the Court if they did not believe them to be true; and whether the experts were authorized to make the statements in the reports.  To ask these questions of a 30(b)(6) witness, Plaintiffs must have the reports and be able to tender them to the witness.

Plaintiffs respectfully submit that these fact discovery purposes necessitate the production of the reports now.  Defendants' proposal that the reports be produced during expert discovery and then only if they re-designate the same expert, would be highly prejudicial as it would completely prevent Plaintiffs from using the information during fact discovery.  It would also prevent Plaintiffs from ever obtaining the report of experts who Defendants do not re-designate – even though those reports are plainly discoverable (Section III, *supra*).

Defendants' proposal also makes little sense from a judicial economy standpoint.  If Defendants are permitted to withhold these reports until after the fact discovery cutoff, there is a significant likelihood that a dispute will arise amongst the parties regarding whether to re-open depositions or other aspects of fact discovery (such as third-party subpoenas) so that Plaintiffs can fairly conduct discovery and examine witnesses on the statements and material in those reports.

### C.    FAIRNESS REQUIRES THAT THE REPORTS BE PRODUCED IMMEDIATELY

At Defendants' insistence, Plaintiffs already had to disclose their expert, Dr. David Dranove, in advance of the scheduled expert disclosures.  *Alaska Air* Doc. 318 (Protective Order) ¶ 12(d) (requiring the parties to disclose the identity of any Independent Expert before providing any Confidential Information to that expert).  Plaintiffs complied with this provision and notified Defendants that Dr. David Dranove would be their economic expert.  Dr. Dranove was the government's expert in *U.S. v. Anthem*.  In that case, the DOJ challenged a merger between Anthem and Cigna as being anticompetitive.  Dr. Dranove opined as to a National Account ASO relevant product market; the effect of the Blues' rules on competition; and, the effect of the proposed merger, both within Anthem's ESA and nationally.  Anthem, of course, already has a copy of Dr. Dranove's expert report that was submitted in the merger case.  In fact, *all MDL Defendants* have a copy of Dr. Dranove's prior expert report because Anthem re-produced that

report in the MDL.  (Ex. F (Sept. 18, 2023 Ltr. from E. Jose (Hogan Lovells) to T. Scheetz (Sperling & Slater)).  Anthem deposed Dr. Dranove on that report and cross-examined him at trial.

Conversely, Plaintiffs do not even know who Defendants will designate as experts in this case, and only seek discovery of materials already submitted to adverse parties and this Court in the MDL.   If there is any unfairness here, it is the unfairness of allowing Defendants to hide their experts' highly relevant prior reports while they already have the highly relevant prior report of Plaintiffs' expert, Dr. Dranove.

## IV.     THE REPORTS ARE ADMISSIBLE

As Rule 26(b)(1) makes clear, Plaintiffs need not establish the admissibility of the reports at this juncture.  Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").  Moreover, as this Court recognized at the status hearing, admissibility is more suited to a determination at the motion in limine stage.  (Tr. at 10).  Nevertheless, Defendants (incorrectly) argue that this Court must address admissibility now.  Plaintiffs, therefore, explain below that in the Eleventh Circuit prior expert reports may be submitted into evidence by the adverse party under Fed. R. Evid. 801(d)(2)(C) and (D) and also under 801(d)(2)(B).

### A.     THE REPORTS ARE ADMISSIBLE AS STATEMENTS OF A PARTY OPPONENT

Under Fed. R. Evid. 801(d)(2)(C), a statement offered against an opposing party is admissible as non-hearsay if it was made by a person whom the party authorized to make a statement on the subject.  Similarly, under Rule 801(d)(2)(D), such a statement is admissible if made by the party's agent or employee on a matter within the scope of that relationship and while

17

it existed.  In the Eleventh Circuit,[7] expert reports from prior cases are admissible as opposing party statements under both of these rules.  *Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir. 1980)[8] (holding that the deposition of an expert hired by defendant to investigate an accident was admissible as an admission of the defendant because "[i]n giving his deposition he was performing the function that [defendant] had employed him to perform."), *superseded by rule on other grounds as stated in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002); *see also United States v. Ala. Power Co.*, 773 F. Supp. 2d 1250, 1257 n.10 (N.D. Ala. 2011) (noting that the *Collins* court analyzed admissibility under Rule 801(d)(2)(D), and that "[b]ecause the expert had been hired by the defendant to investigate and analyze the bus accident at issue, the court found that the expert's report on his investigation and his deposition testimony … was an admission of the defendant."), *rev'd on other grounds by United States v. Ala. Power Co.*, 730 F.3d 1278 (11th Cir. 2013); *Morgan v. Saehaesung Ala., Inc.*, No. 3:12-cv-816, 2014 WL 1239240, at *4 (M.D. Ala. Mar. 25, 2014) (same).

Thus, under *Collins*, prior expert reports are admissible as opposing party statements. Here, Defendants hired their MDL experts to prepare reports opining on various issues in the MDL litigation.  By preparing their reports, the experts performed the very function that Defendants

---

[7] In briefing on this issue to the Special Master, Defendants relied on law from the Third and Fourth Circuits to argue that prior expert reports are not admissible unless "the expert was acting as the party's agent or employee or was specifically authorized to make a statement on that subject." *N5 Tech. LLC v. Capital One N.A.*, 56 F. Supp. 3d 755, 765 (E.D. Va. 2014).  *See also Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995) ("[b]ecause an expert witness is charged with the duty of giving his or her expert opinion regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party").  That is not, however, the law in the Eleventh Circuit.

[8] All decisions of the former Fifth Circuit handed down prior to October 1, 1981 are binding precedent for the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

employed them to perform, which supports their admissibility under Rule 801(d)(2)(D) per *Collins*. The reports are also admissible under Rule 801(d)(2)(C), because, under *Collins*, by hiring experts to prepare reports on specific issues, Defendants authorized them to make statements on the assigned subjects in their expert reports.[9]

### B.   THE REPORTS ARE ADMISSIBLE AS STATEMENTS THAT DEFENDANTS "ADOPTED OR BELIEVED TO BE TRUE"

Under Fed. R. Evid. 801(d)(2)(B), a party's statement is not hearsay and is admissible if it is "offered against the opposing party and … is one that the party manifested that it adopted or believed to be true." Here, Defendants manifested a belief that the factual conclusions drawn by their prior experts were true and correct in a number of ways.

Specifically, Defendants served their experts' reports on their adversaries in the MDL, cited to and relied upon those reports in briefing dispositive issues pending before the Court, Ex. E (Chart of Defendants' Citations to Their MDL Expert reports), and publicly summarized their opinions and submitted those summaries to the Court as the position of Defendants. Each of these acts is sufficient to manifest that Defendants "adopted or believed to be true" the statements in those reports. Fed. R. Evid. 801(d)(2)(B). Viewed in the aggregate, these acts leave no doubt that the prior reports are admissible under Rule 801(d)(2)(B). *See, e.g., Kreitman v. Florida Dept. of Corrections*, 4:20cv371-MW/MJF, 2020 WL 12188711, at *8 (N.D. Fla, Nov. 30, 2020) (holding that statements by defendant's expert in a prior case were admissible under Rule 801(d)(2)(B) to the extent that defendant adopted those statements); *Abstrax, Inc. v. Dell, Inc.*, 2:07-CV-221-DF,

---

[9] Plaintiffs acknowledge the circuit split on this issue but, *Collins* still stands as the controlling precedent in the Eleventh Circuit, and expert reports from prior cases are admissible as opposing party statements. *See In re Blue Cross Blue Shield Antitrust Litig. (MDL No. 2406)*, 2:13-cv-20000-RDP, 2017 WL 588445, at *3 (N.D. Ala. Feb. 14, 2017) (following former Fifth Circuit precedent notwithstanding a circuit split on an issue).

2009 WL 10677355, at *1 ( E.D. Tex Oct. 9, 2009) (holding that statements by defendant's expert in a prior litigation were admissible because the defendant "has manifested an adoption or belief in their truth"); *Whole Foods Market Group, Inc. v. Wical Ltd.*, 1:17-cv-01079-RCL, 2019 WL 6910168, at *2 (D.D.C. Oct. 22, 2019) (statements in expert report from prior litigation held admissible under 801(d)(2)(B) because defendant had cited to report "in a court filing" and thereby "automatically manifested its belief that the statements were true").

## CONCLUSION

For all the reasons set forth in this brief, Plaintiffs request that Defendants be ordered to produce the reports either immediately or, at the latest, 90 days before the completion of fact discovery.

Dated: November 10, 2023                    Respectfully submitted,

                                            By: */s/ Jay M. Ezelle*
                                            Jay M. Ezelle
                                            H. Thomas Wells, III
                                            Benjamin T. Presley
                                            Starnes Davis Florie LLP
                                            100 Brookwood Place, 7th Floor
                                            Birmingham, AL 35209
                                            Tel: (205) 868-6000
                                            Email:  jezelle@starneslaw.com
                                                    twells@starneslaw.com
                                                    bpresley@starneslaw.com

                                            *Counsel for all Plaintiffs in the Alaska Air
                                            and Jet Blue cases*


                                            By: */s/ Paul E. Slater*
                                            Paul E. Slater
                                            Joseph M. Vanek
                                            David P. Germaine
                                            Eamon P. Kelly
                                            SPERLING & SLATER, LLC

55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Tel:     (312) 641-3200
Email: pes@sperling-law.com
            jvanek@sperling-law.com
            dgermaine@sperling-law.com
            ekelly@sperling-law.com

By: /s/ Phillip F. Cramer
Phillip F. Cramer
SPERLING & SLATER, LLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37203
(312) 641-3200
Fax: (312) 641-6492
Email: pcramer@sperling-law.com

*Counsel for JetBlue Airways Corporation and JetBlue Airways Group Health Insurance Plan, The Kraft Heinz Company, Kraft Heinz Group Benefits Plan, Kraft Heinz Retiree Group Benefits Plan, and North Central States Regional Council of Carpenters' Health Fund*

*Alaska Airlines, Inc.; Alaska Airlines, Inc. Welfare Benefit Plan; Alaska Air Group, Inc. Welfare Benefit Plan; Horizon Air Industries, Inc.; Horizon Air Industries, Inc. Welfare Benefit Plan; Employee Benefit Plan for Employees of Horizon Air Industries, Inc.; Employee Benefit Plan for Full-Time and Part-Time Employees Horizon Air Industries, Inc.; Big Lots, Inc.; Big Lots Associate Benefit Plan; Conagra Brands, Inc.; ConAgra Foods, Inc. Welfare Benefit Wrap Plan; The Federal Express Corporation; FedEx Freight, Inc.; The Federal Express Corporation Group Health Plan; The FedEx Corporation Group Health Plan; FedEx Corporation Retiree Group Health Plan; The Federal Express Corporation Retiree Group Health Plan; The Federal Express Corporation Group Health Plan for Pilots; The Federal Express*

21

*Corporation Retiree Group Health Plan for Pilots; FedEx Group Health Plan; JetBlue Airways Corporation and JetBlue Airways Group Health Insurance Plan; Kellogg Company; Kellogg Company Welfare Benefit Plan; Kellogg Company Retiree Welfare Benefit Plan; The Kraft Heinz Company, Kraft Heinz Group Benefits Plan, Kraft Heinz Retiree Group Benefits Plan; McLane Company, Inc. McLane Company, Inc. Welfare Plan; Meijer Inc. including its affiliates Meijer Great Lakes LP, Meijer Stores LP, and Town Total Health LLC; Meijer Health Benefits Plan; North Central States Regional Council of Carpenters' Health Fund; Publix Super Markets, Inc.; Publix Super Markets, Inc. Group Health Benefit Plan; United Natural Foods, Inc., including its affiliates SUPERVALU, INC.. and Unified Grocers, Inc. ("UNFI"); UNFI Health and Welfare Plan; Indiana/Kentucky/Ohio Regional Council of Carpenters Welfare Fund; Ohio Carpenters' Health Fund; SEIU Local 1 & Participating Employers Health Trust; The Local No. 1 Health Fund; Plumbers' Welfare Fund, Local 130, U.A.; The Sheet Metal Workers Local 73 Welfare Fund; Chicago Painters and Decorators Welfare Fund; The Carpenters and Joiners Welfare Fund; Heartland Health & Wellness Fund; GuideStone Financial Resources; GuideStone group Plan; GuideStone Personal Plan; Church Pension Group Services Corporation; General Board of Pension and Health Benefits of the United Methodist Church; Concordia Plan Services; Concordia Health Plan; Portico Benefits Services (the Evangelical Lutheran Church in America's benefit board); Christian Brothers Services (a church plan benefits board created by the Christian Brothers religious order); Christian Brothers Employee Benefit*

*Trust; The Board of Pensions of the Presbyterian Church U.S.A.; The Benefits Plan of the Presbyterian Church (U.S.A.); Employee Benefits Plan of MBM Corporation; and the MBM Corporation*

By: */s/ J. Scott Hickman*
J. Scott Hickman
Eric G. Osborne
SHERRARD ROE VOIGT &
HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
Tel: (615) 742-4200
Fax: (615) 742-4539
Email: shickman@srvhlaw.com
          eosborne@srvhlaw.com

*Counsel for The Kraft Heinz Company, Kraft Heinz Group Benefits Plan, Kraft Heinz Retiree Group Benefits Plan, and North Central States Regional Council of Carpenters' Health Fund*

*Counsel for The Boeing Company; Employee Benefits Plan Committee of The Boeing Company, as the plan administrator and named fiduciary of The Boeing Company Master Welfare Benefit Plan; Bridgestone Americas, Inc.; Bridgestone Americas, Inc. Employee Group Insurance Plan; Bridgestone Americas, Inc. Retiree Medical Plan; CHS/Community Health Systems Inc., sponsor and administrator of the Community Health Systems Group Health Plan; Dollar General Corporation; Dollar General Health Plan (a component of the Dollar General Corporation Employee Benefits Plan); The Federal Express Corporation; FedEx Freight, Inc.; The Federal Express Corporation Group Health Plan; The FedEx Corporation Group Health Plan; FedEx Corporation Retiree Group Health Plan; The Federal Express Corporation Retiree*

23

*Group Health Plan; The Federal Express
Corporation Group Health Plan for
Pilots; The Federal Express Corporation
Retiree Group Health Plan for Pilots;
FedEx Group Health Plan; Tractor
Supply Company; Tractor Supply Medical
Plan*

By: /s/ Jason A. Zweig
Jason A. Zweig
BARTKO ZANKEL BUNZEL &
MILLER
One South Wacker Drive
36th Floor
Chicago, IL 60606
Tel: (415) 291-4505
Email: jzweig@bzbm.com

*Counsel for JetBlue Airways Corporation
and JetBlue Airways Group Health
Insurance Plan, McLane Foodservice
Distribution, Inc., and Employee Benefits
Plan of MBM Corporation*

*Counsel for Alaska Airlines, Inc.; Alaska
Airlines, Inc. Welfare Benefit Plan;
Alaska Air Group, Inc.; Alaska Air
Group, Inc. Welfare Benefit Plan;
Horizon Air Industries, Inc.; Horizon Air
Industries, Inc. Welfare Benefit Plan;
Employee Benefit Plan for Employees of
Horizon Air Industries, Inc.; Employee
Benefit Plan for Full-Time and Part-Time
Employees Horizon Air Industries, Inc.;
American Electric Power Service
Corporation; American Electric Power
System Comprehensive Medical Plan; Big
Lots, Inc.; Big Lots Associate Benefit
Plan; Burlington Northern Santa Fe LLC
(f/k/a Burlington Northern Santa Fe
Corp.); Burlington Northern Santa Fe
Corporation Group Benefits Plan;
Burlington Northern Santa Fe
Corporation Welfare Benefit Trust; FedEx
Corporation; The Federal Express*

24

*Corporation; FedEx Freight, Inc.; The Federal Express Corporation Group Health Plan; The FedEx Corporation Group Health Plan; FedEx Corporation Retiree Group Health Plan; The Federal Express Corporation Retiree Group Health Plan; The Federal Express Corporation Group Health Plan for Pilots; The Federal Express Corporation Retiree Group Health Plan for Pilots; FedEx Group Health Plan; McLane Company, Inc.; McLane Company, Inc. Welfare Plan; Employee Benefits Plan of MBM Corporation; and the MBM Corporation*

*/s/ William J. Blechman*
William J. Blechman
Joshua B. Gray
Elizabeth B. Honkonen
Kenny Nachwalter, P.A.
Four Seasons Tower - Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email: wjb@knpa.com
jgray@knpa.com
ebh@knpa.com

*Counsel for US Foods, Inc.*

*Counsel for Albertsons Companies Inc.; New Albertsons L.P.; Albertson's LLC; New Albertson's Inc.; Safeway Inc.; Albertsons Companies, Inc. Health and Welfare Plan, f/k/a Albertson's LLC Health & Welfare Plan; New Albertson's Inc. Health and Welfare Plan; Hy-Vee Inc.; Hy-Vee and Affiliates Benefit Plan and Trust; The Kroger Co.; 84.51 LLC; Murray's Cheese LLC; The Kroger Co. Health and Welfare Benefit Plan; 84.51 LLC Health & Welfare Plan; Walgreen Co.; US Foods Holding Corporation; US*

*Foods, Inc.; US Foods Health & Welfare Plan; Walgreen Health and Welfare Plan (Plan No. 501) f/k/a Walgreen Major Medical Expense Plan*

*/s/ Jon Corey*_____
Jon Corey
MCKOOL SMITH, PC
One California Plaza
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
(213) 694-1200
jcorey@mckoolsmith.com

John Briody
James Smith
David Schiefelbein
Daniel Hendler
MCKOOL SMITH, PC
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
(212) 402-9400
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com
dschiefelbein@mckoolsmith.com
dhendler@mckoolsmith.com

Lew LeClair
Gary Cruciani
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000
lleclair@mckoolsmith.com
gcruciani@mckoolsmith.com

*/s/ Brenton Morris*_____
Brenton K. Morris
BENTON, CENTENO & MORRIS, LLP
2019 Third Avenue North
Birmingham, Alabama 35203
(205)-278-8000
bmorris@bcattys.com

26

*Counsel for Bed Bath & Beyond Inc.;*
*Automobile Club of Southern California;*
*Darling Ingredients Inc.; Griffin*
*Industries, LLC; Dillard's, Inc.;*
*Halliburton Energy Services, Inc.; G4S*
*Secure Solutions (USA), Inc.; Kimberly-*
*Clark Corporation; Lincoln National*
*Corporation; Live Nation Entertainment,*
*Inc.; Nestlé USA, Inc.; Perdue Farms*
*Inc.; Pacific Gas and Electric Company;*
*PG&E Corporation; Raytheon*
*Technologies Corporation; Raytheon*
*Company; Rockwell Collins, Inc.; Rite*
*Aid Corporation; Rite Aid Hdqtrs. Corp.;*
*Sterling Jewelers Inc.; Zale Corporation;*
*Zale Delaware, Inc.; Starbucks*
*Corporation; Tyson Foods, Inc.; SRZ*
*Liquidating Trust; Transform Midco LLC;*
*and General Motors LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*s/ Benjamin T. Presley*
OF COUNSEL

27