IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **Alaska Air Group, Inc.,** *et al.*, <br>         **Plaintiffs,** <br> v. <br> **Anthem, Inc.,** *et al.*, <br>         **Defendants.** | **No. 2:21-cv-01209-RDP** |
| **JetBlue Airways Corporation,** *et al.*, <br>         **Plaintiffs,** <br> v. <br> **Anthem, Inc.,** *et al.*, <br>        **Defendants.** | **No. 2:22-cv-00558-RDP** |
| **Bed Bath & Beyond Inc.,** *et al.*, <br>         **Plaintiffs,** <br> v. <br> **Anthem, Inc.,** *et al.*, <br>        **Defendants.** | **No. 2:22-cv-01256-RDP** |

**MEMORANDUM OPINION AND ORDER**

These cases are before the court on (1) Plaintiffs' Motion for a Protective Order Concerning Third Party Claims Data (Doc. # 450, 456)[1], and (2) Defendants' Motion to Compel the Production of Non-Blue Claims Data (Doc. # 453, 457). The parties have each filed their initial motions and then responses to opposing counsel's counter-motion. (Docs. # 462, 464, 466). The court heard argument from the parties on these Motions at the November 13, 2024 status conference and allowed the parties further opportunity to meet and confer in an effort to resolve the Motions by

---

[1] For efficiency, the court will only cite to relevant documents in the *Alaska Air* case where the cited documents were also filed in the *JetBlue* case, Case No. 2:22-cv-00558-RDP, and the *Bed Bath & Beyond* case, Case No. 2:22-cv-01256-RDP.

agreement. On November 26, 2024, the parties filed a Joint Status Report indicating that they were unable to resolve the Motions. (Doc. # 491).

I.      **Background and the Parties' Shifting Positions**

The court notes that, ironically, the parties seem to have each reversed their positions on the relevance and burden of producing claims data.

After taking the position that claims data was necessary to address Defendants' two-sided market arguments, Plaintiffs now say that non-Blue claims data has no nexus to Plaintiffs' claims or any defense to those claims. (Doc. # 450 at 4). They explain that they do not assert damages based on the amounts actually paid to providers for services rendered and they do not contend that non-Blue provider prices were affected by the conspiracy alleged in these cases. (*Id.*). They also note that Defendants have repeatedly argued that production of this data (and, for the Blues, it was their own data) is incredibly costly and burdensome to produce. (*Id.*).

As of the filing of Plaintiffs' Motion for Protective Order, Plaintiffs noted that they had not yet received any of Defendants' own claims data requested initially in March 2023. At the November 13, 2024 Status Conference, Plaintiffs reported there are twenty-eight Blues who serve National Accounts. They further report that they have largely come to agreement with eleven of those as to the production of their data, seventeen are delinquent, and there is one who has not produced anything. (Doc. # 486 at 7-11).

After originally challenging the relevance of their own medical claims data, Defendants now seek to compel Plaintiffs (or certain of their non-party insurers) to produce claims data that reflects the submission, adjudication, and payment of healthcare claims submitted by healthcare providers to non-Blue payors each time one of Plaintiffs' members received treatment. (Doc. # 453 at 4). Defendants assert that the information is necessary to calculate the total price Plaintiffs

paid to providers for each service and to determine Plaintiffs' total cost for ASO plans administered by the Blues or their competitors as compared to what Plaintiffs would pay for similar services in a but-for world. (*Id*.). They further explain that because the Blues and their competitors negotiate different discount rates with providers for these services, claims data is relevant to assessing the competitiveness of Defendants' overall prices as compared to non-Blue competitors. (*Id*.). Defendants note that Plaintiffs themselves perform this type of analysis when deciding whether to obtain coverage from the Blues or their competitors. (*Id*.). Defendants assert that Plaintiffs should be compelled to produce the data or to direct their non-Blue payors to do so. (*Id*. at 5).

Plaintiffs argue that the only relevant questions about "competition," "damages," and "antitrust injury" at issue here concern the prices charged by the Blues (and their Green brands) when they compete against each other. (Doc. # 466 at 10-11). Therefore, they contend, relative levels of provider pricing between Defendants and non-Blues are inapposite. (*Id*. at 11).

Defendants argue they need the non-Blue claims data to model the effects of the additional competition on provider choices and provider reimbursement rates. They also contend the information is relevant to calculating the overall price paid by Plaintiffs for ASO coverage. (Doc. # 457 at 4).

In the Joint Report, Plaintiffs note that, since the November 13, 2024 hearing, they have been in contact with Aetna, Cigna and United, who have each advised in writing that they are awaiting an order from the court before taking any further steps with respect to the production of this claims data. But they have apparently made clear to Plaintiffs that this is far from simply a matter of "just pushing send." (Doc. # 491 at 3).

**II.     Legal Standard**

Discovery under the Federal Rules of Civil Procedure is governed, in part, by a principle of proportionality. Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The scope of discovery is broad, and its purpose is to empower parties "to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Ultimately, this court has "broad discretion to compel or deny discovery." *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).

**III.    Analysis**

Evaluating the arguments about the non-Blue claims data is difficult because at different points along the time continuum both sides have taken the position that this type of information is relevant and proportional to the needs of the case, and at other points they have each taken the position it is not.

   **A.     Relevance**

Defendants, who seek the non-Blue claims data, assert that the data is relevant to calculating the actual cost of ASO services to Plaintiffs, and to model the two-sided nature of the market. They argue the data is also relevant to comparing non-price value propositions offered by the non-Blue competitors.

4

Plaintiffs respond that the claims asserted in these cases are based on agreements that eliminated (or, at least, limited) competition among the Blues for Plaintiffs' business. There is no allegation that non-Blues are part of the conspiracy, nor that those entities have been excluded from the market. Furthermore, Plaintiffs do not assert a damages claim based on the amounts actually paid to providers for actual services, nor do they assert non-Blue provider prices were affected by the alleged conspiracy.

Plaintiffs have also agreed to produce what they say is other, less-burdensome document discovery relevant to competition from non-Blue competitors (*i.e.*, production of their contracts with non-Blue insurers, documents reflecting the ASOs decision-making about selecting insurers, and bid packages from brokers). Plaintiffs contend that Defendants' assertion (at least the one they are making now) that the non-Blue claims data is relevant is belied by their prior repeated assertions that their own claims data was not relevant. The court agrees. Defendants have been litigating many of the issues in this case since the MDL was created in 2013. Had this information truly been of relevance to the claims in these cases, surely it follows that Defendants either would not have objected to the production of their own data or would have sought production of the non-Blue claims data earlier. For example, the Blues could have sought to acquire the information that was produced through HCCI[2] in the MDL. Therefore, it appears that the claims data sought is only of marginal relevance. That raises questions of proportionality.

B.   **Proportionality**

On September 11, 2024, the parties filed a Joint Motion to Amend the Case Schedule in which they requested that the deadline for substantial completion of document and data

---

[2] HCCI is a non-profit organization that receives "de-identified" claims data from three of the four National Insurers (Aetna, Humana, and United, but not Cigna) to make the data available to researchers.

5

productions be extended from September 12, 2024 to October 30, 2024. (Doc. # 467). The Joint Motion noted that "the requested extension is necessary to *finalize* productions." (*Id.*) (emphasis added). The court granted the Motion, but the current, extended deadline for substantial completion of document and data productions has passed. (Doc. # 468). Furthermore, under the current Amended Scheduling Order, fact discovery is due to close on December 19, 2024. (Doc. # 442).

Again, the court is cognizant that, in relation to *their own* claims data, Defendants repeatedly asserted that production of individual claims data is costly and burdensome. In fact, the majority of Defendants have not completed production of their own claims data after more than a year and a half,

Defendants argue that in the MDL, Judge Putman ordered production of claims data from non-Blue insurers and, therefore, this court should do the same. (Doc. # 457 at 9). However, in the MDL, Judge Putnam ordered production of claims data from non-Blue insurers in relation to a dispute between the Provider Plaintiffs and the Blues. (*In Re Blue Cross Blue Shield Antitrust Litigation MDL 2406*, Case No. 2:13-cv-20000-RDP, Doc. # 1040). It was the Provider Plaintiffs who moved to compel production of claims data from the Non-Blue insurers. (*Id.* at 1). The Non-Blue insurers objected to producing the claims data because it was burdensome and because they had the data only for a limited time period. (*Id.* at 3). However, they did not object to HCCI (or its vendor, OptumInsight), producing the information. In fact, they preferred that approach because it would be easier and cheaper. (*Id.*). On that discrete issue involving Providers, where the provider reimbursement rates of different insurers were directly at issue in the MDL, Judge Putnam did *not* order production of the claims data from the non-Blue insurers. (*Id.* at 4-5). Indeed, he denied Providers' Motion to Compel in that regard. Rather, recognizing the burden of this production,

6

even where there the data was directly relevant to the Providers claims, he ordered HCCI and/or OptumInsight to produce the data they already had collected and distributed to researchers. (*Id.*).

So, the non-Blue insurers have also taken the position that production of the requested data would be costly and burdensome.

Although the parties have not provided the court with information describing with particularity the burden of this production, one undisputed takeaway from all this back and forth is that, in fact, producing the data would be burdensome. Frankly, in light of their objections to producing their own claims data, and the length of time it has taken them to produce that data, Defendants' argument now that production of this information is not burdensome rings hollow.

Another argument Plaintiffs make is that ordering this third party production of this material would knock the case off its current schedule. Indeed, over a year after the parties began discussing production of Defendants' claims data, it had still not been produced. Currently, the deadline for substantial completion of document and data productions has expired (Doc. # 468), and the close of fact discovery – on December 19, 2024 – is less than three weeks away. (Doc. # 442 at 2).

It appears that Defendants already have (or will soon have) information regarding Plaintiffs' decision-making in choosing ASO services, including its pricing. Plaintiffs have produced or are producing "(1) their contracts with non-Blue insurers (which obviously include pricing); (2) documents relating to their decision-making with respect to the selection of insurers; (3) documents reflecting the factors that they consider when selecting insurers; and (4) bid packages they receive from brokers concerning the selection of insurers." (Doc. # 450 at 15). If production of the requested non-Blue claims data takes even a fraction of the time it took Plaintiffs to secure production of Defendants' own claims data, that production would not be proportional

7

to the needs of these cases, particularly given the production of this other information about non-Blue claims data.

### C.  Conclusion

For all of these reasons, the court concludes that the burden of producing the non-Blue insurers' claims data outweighs its potential relevance and is thus not proportional to the needs of these case. It is therefore **ORDERED** as follows:

1. Plaintiffs' Motion for a Protective Order Concerning Third Party Claims Data (Doc. # 450, 456) is **GRANTED**.

2. Defendants' Motion to Compel the Production of Non-Blue Claims Data (Doc. # 453, 457) is **DENIED**.

**DONE** and **ORDERED** this December 4, 2024.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE