IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **Alaska Air Group, Inc.,** *et al.*,<br>    Plaintiffs,<br>v.<br>**Anthem, Inc.,** *et al.*,<br>    Defendants. | No. 2:21-cv-01209-RDP |

| | |
|---|---|
| **JetBlue Airways Corporation,** *et al.*,<br>    Plaintiffs,<br>v.<br>**Anthem, Inc.,** *et al.*,<br>    Defendants. | No. 2:22-cv-00558-RDP |

| | |
|---|---|
| **Bed Bath & Beyond Inc.,** *et al.*,<br>    Plaintiffs,<br>v.<br>**Anthem, Inc.,** *et al.*,<br>    Defendants. | No. 2:22-cv-01256-RDP |

## MEMORANDUM OPINION AND ORDER

These cases are before the court on Issuing Defendants' Motion to Compel UnitedHealth Group, Incorporated ("United") to Produce Plaintiff-Specific Bid Information. (Doc. # 542).[1] More specifically, Defendants' Motion seeks to compel non-party United to produce "United's internal communications and analyses relating to the bids it made to these Plaintiffs for the services at issue in these cases." (*Id*. at 2).[2] United opposes Defendants' Motion because (1) the information sought

---

[1] For efficiency, the court will only cite to relevant documents in the *Alaska Air* case where the cited documents were also filed in the *JetBlue* case, Case No. 2:22-cv-00558-RDP, and the *Bed Bath & Beyond* case, Case No. 2:22-cv-01256-RDP.

[2] In light of the information sought via this Motion, and the fact that United has agreed to produce its Plaintiff-Specific Bids and how it's ASO prices are set, the court notes that this title is somewhat misleading.

consists of highly sensitive internal communications and analyses regarding its competitive bids for the Plaintiffs' health plan business, (2) the production would be burdensome, and (3) the disclosure of the requested information would risk further harm to competition as well as substantial harm to United's business. (Doc. # 550 at 2). The Motion is fully briefed (Docs. 542, 550, and 562), and the court heard argument from Defendants and United on this Motion at the April 4, 2025 status conference.

**I.    Background**

On March 12, 2024, Defendants issued a subpoena to non-party United, one of the Blues' primary competitors, for the production of a significant volume of documents over a sixteen-year period. (Doc. # 538-2). United objected to the subpoena on the basis that its scope was unreasonable. (Doc. # 550 at 3). After a year of negotiations, Defendants narrowed the scope of their initial requests, and Defendants and United reached agreement on the "vast majority" of the subpoena's requests. (Doc. # 537 at 1).

Pursuant to those negotiations, United has agreed to produce a substantial amount of responsive information, including the following:

- Nationwide enrollment data for United's national network products (Request for Production 2).

- Ordinary course financial information on United's Plaintiff customers (Request for Production 3).

- A description of how United's ASO prices are set (Request for Production 4).

- Documents discussing United's expansion or contraction of its offerings for National Accounts (Request for Production 6).

- United's nationwide network provider counts covering the relevant period (Request for Production 7).

- Plaintiff bid documents not otherwise produced by Plaintiffs and their consultants (Request for Production 8).

- Documents discussing facts regarding National Accounts competition and competitors (Requests for Production 9 and 10).

- United's deposition transcript and exhibits from the MDL class actions (Request for Production 16).

- United's document productions in the MDL class actions (Request for Production 17)

(Doc. # 550 at 4-5).

United contends that this information "provides Defendants with a thorough and detailed view of United's bids for the Plaintiffs and its role in competing for National Accounts customers." (*Id*. at 5). As noted above, it appears United has agreed to produce information reflecting not only what its bids for Plaintiffs' business actually were, but also how it sets ASO prices. And United has agreed to produce its document productions from the MDL. Not satisfied with this information, however, Defendants seek documents reflecting United's highly sensitive *internal* communications and analyses regarding its competitive bids for Plaintiffs' health plan business.

## II.    Legal Standard

"Rule 45 is the proper vehicle for obtaining documents and other materials from nonparties relevant to a pending lawsuit." *Landstar Glob. Logistics, Inc. v. Haskins*, 2011 WL 13176155, at *1 (M.D. Fla. Jan. 25, 2011). But it "must be read in conjunction with Rule 26 [which] clearly defines the scope of discovery for all discovery devices." *Id*. Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[T]he relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020).

Rule 45 imposes a requirement upon the party or attorney issuing a subpoena to take reasonable steps to avoid imposing undue burden on the non-party subject to the subpoena. *Aeritas, LLC v. Delta Airlines, Inc.*, 2013 WL 454452, at *2 (N.D. Ga. Feb. 7, 2013) (citing Fed. R. Civ. P. 45(c)(1)). "The undue burden analysis requires the court to 'balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir. 2020) (quoting 9A Wright & Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2019)). "The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry." *Jordan*, 947 F.3d at 1337 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.")). "The burden on the non-party is particularly great when the party issuing the subpoena seeks private information." *Castleberry v. Camden Cnty.*, 331 F.R.D. 559, 563 (S.D. Ga. 2019) (quoting *Pinehaven Plantation Properties, LLC v. Mountcastle Family LLC*, 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013)

### III. Analysis

United, a non-party to these cases, is one of Defendants' competitors for Plaintiffs' business. Nevertheless, Defendants seek United's private, highly sensitive, *internal* communications and analyses about its bids for Plaintiffs' health plan business. (Doc. # 542).

Defendants' Motion simply argues that that they need this information for "necessary context." (Doc. # 542 at 6). But, United has agreed to provide the information it produced in the

4

MDL in this case, so apparently the documents currently at issue were not needed in the MDL. Defendants have not provided any indication of how this information would provide context or what they plan to do with this information. For example, they have not presented an affidavit explaining why their experts must have the information to conduct their own analyses. (Doc. # 539, 542); *see also Fusion Elite All Stars v. Nfinity Athletic LLC*, 2022 WL 1175691, at *5 (W.D. Tenn. Apr. 20, 2022)  (movant had shown a need for the data at issue via expert's declaration stating why the information was relevant and what the information would be used for). Having said that, Defendants have explained why they believe the information United has agreed to produce is insufficient:

> United's bid proposals alone will not provide what Defendants need. They do not include United's internal assessment of a specific Plaintiff's business. They do not discuss the price and other terms United may be willing to offer to win that Plaintiff's business in negotiations. They would not reflect the evaluation of what United's competitors (including the Blues) might offer the Plaintiff that United cannot.

(Doc. # 542 at 5). Defendants' Reply significantly fleshes out its arguments regarding why the documents at issue are relevant. (Doc. # 562 at 2-6).

United has agreed to produce to Defendants information reflecting not only what its bids for Plaintiffs' business actually were, but also how it set those bids. Defendants will be receiving (or may already have received) information from Plaintiffs' health care benefit consultants regarding their analysis of the bids. United argues that its internal communications and analyses regarding those bids "have little relevance to the issues in the cases." (Doc. # 550 at 2). The court is left with questions about why, from this information, Defendants or their experts cannot do their own analysis and why they must rely on United's.

Apart from the confidentiality of the information, United has also provided an affidavit explaining the significant burden producing the additional information would impose. (Doc. # 550-

1 at 4-5). To produce the additional information sought by Defendants, "United would have to collect and search emails and documents from hundreds of employees." (*Id.* at 5). Producing the documents would involve collecting, processing, and reviewing thousands of documents and "require attorney review and redaction for legal privilege before they could be produced." (*Id.*). Based on its experience, United's IT department estimates that collection, review, and production of the responsive documents from even a small portion of the employees from the relevant United teams would cost an estimated six figures. (*Id.*).

Defendants respond that they are willing to negotiate regarding the number of custodians any search would need to encompass. But, this begs the question why the initial request was overly broad rather than targeted.

United also provided evidence regarding the potential risk of harm that could result from disclosure of the requested information. (*Id.* at 3). The court understands that there are robust protective orders in place in these cases that includes an "Outside-Counsel Only" designation. However, those orders cannot entirely mitigate the risk of disclosure of the competitively sensitive *internal* communications and analyses Defendant seek.

In *Fusion Elite All Stars v. Nfinity Athletic LLC*, an antitrust case, Fusion Elite sent a subpoena to one of its competitors, Nfinity. 2022 WL 1175691, at *1 (W.D. Tenn. Apr. 20, 2022). Two particular requests for documents in that subpoena are relevant to the court's analysis here:

> REQUEST NO. 27: All Documents reflecting, relating to, or concerning studies, analyses, memoranda, slide decks, white papers, or other Documents referencing or relating to the effects of the Network Agreement, Family Plan, or pricing more generally on: a. Nfinity's profitability; b. Nfinity's ability to compete with Varsity or any other persons or entities in selling Apparel or engaging in any other line of business; c. Nfinity's ability to attract Gyms or Athletes to buy Your Apparel or to purchase any other product or service from Nfinity; or d. Nfinity's prices, fees, rebates, discounts, or other terms of sale.

>REQUEST NO. 33: All Documents and/or Communications referencing or relating to the Plaintiffs.

*Fusion Elite*, 2022 WL 1175691 at *2-3. The court granted in part and denied in part the parties' respective motions to compel and to quash. *Id*. at *7. The court ordered Nfinity to produce extensive transactional data for which the court found Fusion Elite had shown a need. *Id*. at *5. But, it denied the motion to compel and granted the motion to quash as to "documents related to Nfinity's ability to compete" in the market and "documents and communications referencing or relating to Plaintiffs." *Id*. at *6. The court concluded that Fusion Elite had offered little, if any, justification for these requests, and given the cost of producing the other transactional data, the burden of producing these additional documents outweighed any benefit to the plaintiffs. *Id*. at *7.

Although the Blues cite *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 91 (S.D. Ohio 2013) as an example of a court ordering production of internal information, that decision is distinguishable from the issue before this court. There, the subject of the subpoena, Anthem, was alleged to be a part of the conspiracy that was the basis for the plaintiff's claims in the case. *Med. Ctr. at Elizabeth Place,* 294 F.R.D. at 93. So, although it was not a party to the case, Anthem's actions were directly relevant to the plaintiff's conspiracy claims in the case. *Id*. The same cannot be said for non-party United.

Here, United has agreed to produce substantial amounts of information including not only what its bids for Plaintiffs' business actually were, but also how it set those bids, and its productions from the MDL. Defendants will also have access to information from Plaintiffs' health care benefit consultants regarding their analysis of the bids. This substantial information will allow Defendants to conduct their own analysis of bids for Plaintiff's business. *See Med. Ctr. at Elizabeth Place,* 294 F.R.D. at 95 ("The [c]ourt is not convinced that the parties cannot evaluate the

7

marketplace without raiding [United's] secrets."). Therefore, the court determines that the burden of producing these additional documents outweighs the benefit to Defendants.

## IV. Conclusion

As robust as the protective orders in these cases are, the case for the relevance of United's internal communications regarding and analysis of its bids for Plaintiffs' work is weak. United is a non-party competitor of Defendants. These cases are about the absence of other *Blue* competitors in the market. The burden imposed on United by the Blues' requests is particularly significant here because of the scope of the requests and particularly the fact that Defendants are United's competitors and the subpoena seeks private, competitively sensitive information that would be burdensome to produce. *See Castleberry*, 331 F.R.D. at 563. Having balanced the interests served by the production of the requested information against the burden on non-party United to produce the information, particularly in light of the other information United has agreed to produce, the court concludes that Defendants' Motion is due to be denied.

Defendants' Motion to Compel UnitedHealth Group, Incorporated to Produce Plaintiff-Specific Bid Information (Doc. # 542)[3] is **DENIED**.

**DONE** and **ORDERED** this April 7, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE

---

[3] (Case No. 2:22-cv-00558-RDP, Doc. # 470 and Case No. 2:22-cv-01256-RDP, Doc. # 452).