FILED
2026 Jun-04 PM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| Alaska Air Group, Inc., *et al.*,<br>Plaintiffs,<br>v.<br>Anthem, Inc., *et al.*,<br>Defendants. | No. 2:21-cv-01209-AMM |
| JetBlue Airways Corporation, *et al.*,<br>Plaintiffs,<br>v.<br>Anthem, Inc., *et al.*,<br>Defendants. | No. 2:22-cv-00558-AMM |
| Bed Bath & Beyond Inc., now known as 20230930-DK-Butterfly-1, Inc., *et al.*,<br>Plaintiffs,<br>v.<br>Anthem, Inc., *et al.*,<br>Defendants. | No. 2:22-cv-01256-AMM<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... ii

PRELIMINARY STATEMENT .............................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................. 2

A. Fully-Insured Subscribers File Putative Class Actions Beginning in 2012. ............................................................ 2

B. ASOs File Their First Complaint on November 2, 2020. ..................... 5

C. The MDL Court Approves the Settlement. ........................................ 6

D. ASO Plaintiffs Opt-Out of the Self-Funded Subclass and File Suit. ............................................................................ 8

LEGAL STANDARD ............................................................................ 8

ARGUMENT ........................................................................................ 9

I. PLAINTIFFS CANNOT PURSUE DAMAGES FOR CLAIMS THAT ACCRUED BEFORE NOVEMBER 2, 2016. .................................. 10

A. The Original *Cerven* Complaint Did Not Include ASOs. ................... 11

B. ASO Claims Were Not Tolled Until the Fourth Amended Complaint. ............................................................................ 14

II. ASO CLAIMS WERE NOT TOLLED BY PRE-COMPLAINT MEDIATION DISCUSSIONS. ............................................................ 15

CONCLUSION .................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Air*, 2023 WL 12166895 (N.D. Ala. Feb. 21, 2023) .................................. 16

*Alaska Air*, 2024 WL 1892279 (N.D. Ala. Apr. 30, 2024) .................................. 13

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) .......................... 10, 11, 16, 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 8

*Berkery v. Verizon Commc'ns Inc.*, 658 F. App'x 172 (3d Cir. 2016) (*per curiam*) ............................................................................................ 10, 11

*Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544 (11th Cir. 1990) ................................................................................................ 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................... 8

*China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018) ...................................... 10, 16

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) ................................... 10

*Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563 (D.N.J. 2002) ........................ 11

*Doe K.R. v. Choice Hotels*, No. 6:23-CV-1012, 2025 WL 3469855 (M.D. Fla. Dec. 3, 2025) ......................................................................... 9

*Ford Motor Co. v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, No. CV 23-11286, 2024 WL 1396264 (E.D. Mich. Mar. 30, 2024) .................... 14, 15

*Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016) ......................... 8

*In re Blue Cross Blue Shield Antitrust Litig.* MDL 2406, 85 F.4th 1070 (11th Cir. 2023) ................................................................. 2, 4, 8, 13

*In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 4587618 (N.D. Ala. Aug. 9, 2022) ........................................... 7, 13

*In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 2021 WL 1909777 (D.D.C. May 12, 2021) ................................................................. 16

*In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, No. 1:22-CV-02587, 2023 WL 4105105 (D.D.C. June 21, 2023)....17

*In re Syntex Corp. Sec. Litig.*, 95 F.3d 922 (9th Cir. 1996)....10

*Machesney v. Ramsgate Ins., Inc.*, No. 13-11804, 2014 WL 2605479 (E.D. Mich. June 10, 2014)....14

*Med. Admins. Sols. LLC v. Truist Bank, Inc.*, No. 1:23-CV-5120, 2024 WL 4525523 (N.D. Ga. June 3, 2024)....18

*Palmer v. Union Pac. R.R. Co.*, 656 B.R. 789 (D. Neb. 2023) ....11

*Raziano v. United States*, 999 F.2d 1539 (11th Cir. 1993)....17

*Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005)....8

*Spagnoli v. Medtronic Minimed, Inc.*, No. 07-22871-CIV, 2009 WL 10669108 (S.D. Fla. Mar. 10, 2009)....17

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735 (7th Cir. 2018)....10, 18

**Statutes & Rules**

15 U.S.C. § 15b....9

Fed. R. Civ. P. 56(a)....8

# CITATIONS

| Citation | Reference |
|---|---|
| Facts | The Statement of Undisputed Material Facts in this Brief |
| MDL | *In re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406, No. 2:13-cv-20000-RDP (N.D. Ala.) |
| *Alaska Air* | *Alaska Air Grp., Inc. v. Anthem, Inc.*, No. 2:21-cv-01209-AMM (N.D. Ala. 2022) |
| *JetBlue* | *JetBlue Airways Corporation v. Anthem, Inc.*, No. 2:22-cv-00558-AMM (N.D. Ala. 2022) |
| *Bed Bath & Beyond* | *Bed Bath & Beyond Inc. v. Anthem, Inc.*, No. 2:22-cv-01256-AMM (N.D. Ala. 2022) |
| *Cerven* | *Cerven v. Blue Cross Blue Shield of N.C.*, No. 5:12-cv-0017 (W.D.N.C.) |

## PRELIMINARY STATEMENT

ASO Plaintiffs filed these individual antitrust actions in 2021 and 2022, and all of their claims are subject to a four-year statute of limitations. Yet ASO Plaintiffs seek damages back to 2008 based on purported class action tolling from a class action complaint filed in 2012 (*Cerven*). That argument fails as a matter of law because the *Cerven* plaintiffs were fully-insured subscribers—*not* administrative services only ("ASO") purchasers. Indeed, Subscriber Class Counsel, the authors of the *Cerven* Complaint, confirmed on multiple occasions that *Cerven did not include* ASOs. Rather, the first claims asserted on behalf of ASOs were not filed until November 2, 2020, with the filing of the Fourth Amended Complaint (MDL Dkt. 2616). This means Plaintiffs can only recover, if at all, for claims dating back to November 2, 2016. Any claims that accrued before that date are time-barred. Indeed, this is the holding of the only other federal court to decide this issue for an ASO opt-out from the MDL Subscriber Class Settlement, the *Ford* court in the Eastern District of Michigan. This Court should thus enter summary judgment for Defendants on all ASO claims based on alleged injuries occurring before November 2, 2016.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Certain Fully-Insured Subscribers File Putative Class Actions Beginning in 2012.

1. On February 7, 2012, a putative class of health insurance subscribers filed an antitrust suit against Blue Cross Blue Shield of North Carolina and the Blue Cross Blue Shield Association (the "*Cerven* Complaint"). (*Cerven* Dkt. 1.)

2. The *Cerven* Complaint defined a putative damages class that was limited to "[a]ll persons or entities who . . . paid health insurance premiums . . . for individual or small group full-service health insurance."[1] (*Id.* ¶ 21.) The *Cerven* Complaint also defined a putative injunctive relief class that was limited to persons or entities "insured" by a licensee of BCBSA. (*Id.* ¶ 20.)

3. "Self-funded accounts do not buy health insurance. They instead purchase administrative services and unbundled products like vision, dental, and stop-loss insurance from Blue Cross. Self-funded accounts self-insure for healthcare costs, so the employer, not Blue Cross, pays for its employees' healthcare costs at Blue Cross rates. The self-funded account employees might contribute to their premiums or to the cost of the products purchased by their employer." *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1084 (11th Cir. 2023).

[1] The *Cerven* Complaint defined "small group" as "those with 3-199 employees." (*Cerven* Compl. ¶ 130.)

4. The *Cerven* Complaint expressly distinguished "fully-insured" products from "ASO products." It explained that "[w]hen a consumer purchases a *fully-insured* health insurance product, the entity from which the consumer purchases that product . . . pays its enrollees' medical costs, bears the risk that its enrollees' health care claims will exceed anticipated losses, controls benefit structure and coverage decisions, and provides 'administrative services' to its enrollees." (*Cerven* Dkt. 1 ¶ 129.) The *Cerven* Complaint contrasted ASO products: "when a consumer purchases an *administrative services only* ('ASO') product . . . the entity from which the consumer purchases that product provides administrative services only." (*Id.*)

5. The *Cerven* Complaint expressly confirmed that fully-insured products and ASO products are not substitutable for members of the putative damages class because, as small groups and individuals, they were unable to self-insure. (*See id.* ¶ 131 ("[I]t is appropriate to consider the individual and small group health insurance product market as distinct from the large group health insurance product market. In the former, consumers are largely unable to self-insure.").)

6. Similar lawsuits were filed around the country. On January 8, 2013, the Judicial Panel on Multidistrict Litigation entered an order creating MDL No.

2406, *In re Blue Cross Blue Shield Antitrust Litigation*, in the Northern District of Alabama. (MDL Dkt. 1.)

7. Following transfer, the Subscriber Class Plaintiffs filed a Consolidated Class Action Complaint. (MDL Dkt. 85.) Like in the *Cerven* Complaint, the Subscriber Track Consolidated Class Action Complaint defined the putative damages classes to cover persons or entities who "paid health insurance premiums . . . for individual or small group full-service commercial health insurance." (*Id.* ¶¶ 266–79.) The Consolidated Class Action Complaint also expressly distinguished ASO products from fully-insured products and products sold to large groups from products sold to small groups and individuals. (*Id.* ¶¶ 394–96.) The putative injunctive relief class also mirrored the injunctive relief class in the *Cerven* Complaint. (*See id.* ¶ 262; *supra* ¶ 2.)

8. The Subscriber Class Plaintiffs amended their complaints again in 2014, 2016, and 2017. (MDL Dkts. 244, 897, 1082.) In each subsequent amendment, the damages class definitions were consistent; they covered "individual or small group" customers who "paid health insurance premiums" for "full-service commercial health insurance." (*See* MDL Dkt. 244 ¶¶ 278–94; MDL Dkt. 897 ¶¶ 308–35; MDL Dkt. 1082 ¶¶ 316–43.) The injunctive relief class definitions stayed consistent as well. (*See* MDL Dkt. 244 ¶ 277; MDL Dkt. 897 ¶¶ 306–07; MDL Dkt. 1082 ¶¶ 314–15.)

9. On April 15, 2019, Subscriber Class Plaintiffs filed motions for class certification. (MDL Dkts. 2407, 2409.) The proposed class definitions specifically "[e]xcluded from the Class [] subscribers to Administrative Services Only or Administrative Service Contracts." (MDL Dkt. 2407 at 1; MDL Dkt. 2409 at 1–2.)

**B. ASOs File Their First Complaint on November 2, 2020.**

10. On October 30, 2020, Subscriber Plaintiffs filed a motion for preliminary approval of a settlement. (MDL Dkt. 2610). The Damages Class was defined to include "Individual Members," "Insured Groups," and "Self-Funded Accounts." (MDL Dkt. 2610-02 ¶ 1.v).

11. Under the proposed settlement's allocation of settlement funds, "Self-Funded Claimants" would receive 6.5% of the funds, based on the "potential statute of limitations issues and the relative size of the administrative fees paid by Self-Funded Claimants vs. the premiums paid by F[ully] I[nsured] Claimants." (MDL Dkt. 2610-08 ¶¶ 12–14.)

12. On November 2, 2020, Subscriber Plaintiffs filed a Fourth Amended Complaint. (MDL Dkt. 2616.) For the first time in any complaint, "Self-Funded Accounts" were included as members of alleged injunctive relief and damages classes. (*Id.* ¶¶ 317–18 ("All Individual Members, Insured Groups, *Self-Funded Accounts*, and Members") (emphasis added).)

### C. The MDL Court Approves the Settlement.

13. At the Motion Hearing for Final Approval of the Class Settlement of Subscriber Plaintiffs' Claims on October 21, 2021, Subscribers addressed objections by an account that purchased ASO services based on a relatively shorter Self-Funded Class Period in the settlement. (MDL Dkt. 2865 at II-134:11–136:23.)

14. Co-Lead Subscriber Class Counsel, David Boies, provided "an analysis of why ASOs were not included in our complaint to start with." (*Id.*)

15. Boies explained that "in terms of the overall class definition, we talked about insured, not ASOs. We talked about the insured. And the ASO people don't receive insurance. They receive the administrative services. And they are providing their own self-insurance, by definition." (*Id.* at II-149:4–11.)

16. Boies commented that "[t]he ASOs had more competition. It was a more competitive market. The ASOs generally had greater bargaining power. They were larger organizations." (*Id.* at II-134:11–21.) Boies also stated: "From the beginning, we were focusing on the fully insured market. That's what our papers said. That's what our discovery was about. That's what the defendants were on notice about. When we talked about them saying we had a big class, they were talking about the fully insured. They weren't talking about the ASOs. No

one was ever suggesting that the ASOs were part of our -- part of our litigation." (*Id.* at II-161:11–19.)

17. At the same Hearing, the Court noted: "when ASOs [were] introduced into this, that was news to me. At no point at any time did the Blues or the subscribers suggest to me that ASOs were ever part [or] a target of this litigation." (*Id.* at II-157:11–17.)

18. In later approving the Subscriber settlement, Judge Proctor approved a "6.5% allocation for the Self-Funded Class" from the settlement fund as "fair, adequate, and reasonable," over objections that the Self-Funded Class should be allocated more, because "the *Cerven* complaint plainly did not contemplate ASOs being part of that case or the relevant class." *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 4587618, at *29, *31 (N.D. Ala. Aug. 9, 2022). "The *Cerven* complaint simply gave no notice to Defendants whatsoever that they would have to defend against alleged misconduct in the ASO market," such that "ASOs cannot get the benefit of the *Cerven* filing date." *Id.* at *31.

19. The Eleventh Circuit affirmed. In so doing, the Eleventh Circuit held that "self-funded accounts were not included in the damages or injunctive classes" asserted in the *Cerven* Complaint, and that "[t]he district court did not abuse its discretion in ruling that the self-funded claimants' request for damages did not

relate back to the *Cerven* complaint and in approving a settlement allocation with a shorter damages period for them." *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1097–98 (11th Cir. 2023).

**D. ASO Plaintiffs Opt-Out of the Self-Funded Subclass and File Suit.**

20. The *Alaska Air*, *JetBlue*, and *Bed Bath & Beyond* Plaintiffs filed suit on September 4, 2021, May 2, 2022, and September 27, 2022, respectively. (*Alaska Air* Dkt. 1; *JetBlue* Dkt. 1; *Bed Bath & Beyond* Dkt. 1.)

21. Plaintiffs purchased self-funded, or ASO, products, and seek damages based on those purchases. (*Alaska Air* Dkt. 86, ¶ 1 n.2; *JetBlue* Dkt. 16, ¶ 1 n.2; *Bed Bath & Beyond* Dkt. 135, ¶ 1 n.1.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one that 'might affect the outcome of the suit under the governing law.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment must be granted if the nonmoving party has "failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1294 (11th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Once the defendant 'shows that the applicable statute of limitations bars the claim, the burden shifts to the [plaintiff] to demonstrate that an exception or [a] tolling provision applies.'" *Doe K.R. v. Choice Hotels*, No. 6:23-CV-1012, 2025 WL 3469855, at *4 (M.D. Fla. Dec. 3, 2025); *see also Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990).

**ARGUMENT**

Plaintiffs' claims are subject to a four-year statute of limitations. *See* 15 U.S.C. § 15b. Despite this, Plaintiffs purport to seek damages dating back to at least 2008 and argue that this statute of limitations was "tolled by the pendency of one or more class action complaints." (*Alaska Air* Dkt. 86, ¶ 432; *JetBlue* Dkt. 16, ¶ 313; *Bed Bath & Beyond* Dkt. 135, ¶ 377.)

Because the MDL complaints did not include ASOs as members of the asserted class before November 2, 2020, Plaintiffs' claims were not tolled before that date, and Plaintiffs cannot recover damages incurred before November 2, 2016. (*See infra* Section I.) At the motion to dismiss stage, Judge Proctor questioned whether pre-complaint mediation discussions involving ASOs may have further tolled ASOs' claims, but no legal authority supports tolling on that basis. (*See infra* Section II.)

## I. PLAINTIFFS CANNOT PURSUE DAMAGES FOR CLAIMS THAT ACCRUED BEFORE NOVEMBER 2, 2016.

Statutes of limitations place the burden on plaintiffs to diligently pursue their claims. They exist to ensure essential fairness to defendants while "barring a plaintiff who has slept on his rights" from bringing a claim. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (citation omitted). "The [Supreme] Court held in *American Pipe* that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech, Inc. v. Resh*, 584 U.S. 732, 735 (2018); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983). Courts across the country have interpreted *American Pipe* and its progeny to establish a brightline test for determining whether plaintiffs' claims were tolled: whether plaintiffs are "asserted members of the class" in a previously filed class action complaint. *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 742 (7th Cir. 2018) (no tolling when plaintiffs "were not 'asserted members of the class' defined in the original complaint and their claims were not encompassed by the original suit"); *see also Berkery v. Verizon Commc'ns Inc.*, 658 F. App'x 172, 174 (3d Cir. 2016) (*per curiam*) (no tolling when plaintiff was not a member of the asserted class, even though he received an erroneous notice stating he was part of the class); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935–36 (9th Cir. 1996) ("The equitable tolling doctrine only tolls the statute of limitations for asserted class members.");

*Palmer v. Union Pac. R.R. Co.*, 656 B.R. 789, 797 (D. Neb. 2023) (explaining that "*American Pipe* tolling only applies if [a plaintiff] is included in all asserted members of the class who would have been parties had the suit been permitted to continue as a class action, *i.e.*, if he was a putative class member," and rejecting tolling because the plaintiff was not "an asserted member of the [putative] class" based on the Amended Complaint) (citations omitted)).

Courts apply this principle even "where a party may have thought he was a purported class member but was, in reality, excluded from the class definition." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 581 (D.N.J. 2002) ("Because Plaintiff here was never a purported class member of the CalPERS class, *American Pipe* tolling would not save his claim."); *see also Berkery*, 658 F. App'x at 174. This objective and easy-to-administer test promotes the core purpose of class action tolling: "efficiency and economy." *Am. Pipe*, 414 U.S. at 553.

Here, ASOs were not "members of the asserted class" in any iteration of any complaint filed before November 2, 2020. (Facts ¶¶ 8–9.)

### A. The Original *Cerven* Complaint Did Not Include ASOs.

The *Cerven* Complaint was limited to claims on behalf of fully-insured subscribers. (*See* Facts ¶¶ 1–4, *Cerven* Compl. ¶¶ 20–21.) The injunctive relief class definition included only entities "*insured* by any health insurance plan," and the damages relief class included only entities who "paid health insurance

premiums to [a specific Blue Plan] for individual or small group *full-service commercial health insurance*." (*Id.* (emphasis added)). ASO purchasers are self-insured (*see* Facts ¶¶ 3, 21), meaning "they did not buy insurance from the Blues" (MDL Dkt. 2931 at 61). Unlike fully-insured subscribers, ASO purchasers retain the financial risk of paying medical claims. (*See* Facts ¶¶ 3, 15–16.) The *Cerven* Complaint specifically alleged that ASO products were not encompassed by the alleged relevant product market of insured products. (*See* Facts ¶¶ 1–5; *Cerven* Compl. ¶ 129 (distinguishing "fully-insured health insurance" products from "ASO products"), *id.* ¶ 131 ("For the purposes of market division, it is appropriate to consider the individual and small group health insurance product market as distinct from the large group health insurance product market" because "[i]n the former, consumers are largely unable to self-insure and competition is therefore restricted to plans that offer fully-insured health insurance products; in the latter, consumers are able to self-insure and the bulk of competition occurs between firms offering ASO products.").) If any question remained about whether ASOs were members of the *Cerven* complaint, Subscriber Class Counsel repeatedly told the Court that ASOs were not members of their class. (*See* Facts ¶¶ 14–17.)

All three federal courts to consider the question have now concluded that ASOs were not members of the *Cerven* class. The MDL Court expressly considered and rejected the argument that the *Cerven* Complaint encompassed

ASO claims. (*See* Facts ¶ 18, *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *31 ("ASOs are excluded from both the proposed damages and the injunction classes" in *Cerven*, and "[t]he *Cerven* complaint plainly did not contemplate ASOs being part of that case or the relevant class.").) In fact, Judge Proctor, in this very case, was clear that "the early complaints filed in the MDL cases, *e.g.*, *Cerven*, did not toll the statute of limitations for the ASO Plaintiffs in these opt-out cases." (Amended Memorandum and Order, *Alaska Air*, 2024 WL 1892279, at *4 (N.D. Ala. Apr. 30, 2024), Dkt. 435 (internal citation omitted).)

The Eleventh Circuit reached the same conclusion in affirming the MDL Court's judgment approving the Subscriber Settlement. (*See* Facts ¶ 19, *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th at 1097–98 ("[S]elf-funded accounts were not included in the damages or injunctive classes" asserted in the *Cerven* Complaint, and "[t]he district court did not abuse its discretion in ruling that the self-funded claimants' request for damages did not relate back to the *Cerven* complaint and in approving a settlement allocation with a shorter damages period for them.").)

The only other federal court to consider this question for an ASO opt-out from the MDL sub-class reached this same conclusion. Ford Motor Company, another purchaser of ASO products from Defendants, opted out of the Subscriber Settlement and sued in the Eastern District of Michigan. In that case, Judge Parker

also held that ASOs were not part of *Cerven*. *See Ford Motor Co. v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, No. CV 23-11286, 2024 WL 1396264, at *9 (E.D. Mich. Mar. 30, 2024) ("Ford's claims for antitrust violations related to ASOs were not a part of the original class definition for which it now seeks relief and therefore cannot benefit from *American Pipe* tolling.").

### B. ASO Claims Were Not Tolled Until the Fourth Amended Complaint.

Following the *Cerven* Complaint, Subscriber Class Plaintiffs filed a Consolidated Class Action Complaint, which they amended three times. (Facts ¶ 8.) None of these complaints included ASOs. (*See* MDL Dkt. 85; MDL Dkt. 244; MDL Dkt. 897; MDL Dkt. 1082.) It was not until the Fourth Amended Complaint was filed on November 2, 2020, that ASOs were included. (Facts ¶ 12, MDL Dkt. 2616.) Because of the four-year statute of limitations, Plaintiffs therefore cannot recover damages prior to November 2, 2016.

This is consistent with the holding in *Ford*. 2024 WL 1396264, at *9. When determining the tolling date for ASO claims at the motion to dismiss stage, the *Ford* court held that Ford's ASO claims could not benefit from class action tolling before November 2, 2020. *Id.* The court explained that "the first step is to determine whether [plaintiffs'] claims were part of the original class definition . . . and thereby benefit from *American Pipe* tolling." *Id.* at *8 (quoting *Machesney v. Ramsgate Ins., Inc.*, No. 13-11804, 2014 WL 2605479, at *3 (E.D. Mich. June 10,

2014)). Applying that step, the court analyzed the proposed class definition in the *Cerven* Complaint and correctly concluded that it "sought to include only those who purchased 'full-service' commercial health insurance, not 'administrative services only' products." *Id.* at *9. Judge Parker then held that "Ford's claims for antitrust violations related to ASOs were not a part of the original class definition for which it now seeks relief and therefore cannot benefit from *American Pipe* tolling." *Id.* Because the Fourth Amended Complaint in the MDL was the first complaint that "clearly intended for ASOs to be included," Ford's ASO claims for damages were limited to four years prior to the date of that Complaint—November 2, 2016. *Id.*

What was true in *Ford* is also true here, and the analysis is no different. Every complaint before the Fourth Amended Complaint was clear that it did *not* include ASO Plaintiffs (*see* Facts ¶¶ 7–9), therefore the Fourth Amended Complaint triggered tolling for ASO claims.

## II. ASO CLAIMS WERE NOT TOLLED BY PRE-COMPLAINT MEDIATION DISCUSSIONS.

In reserving a decision on the statute of limitations at the motion to dismiss stage, Judge Proctor raised questions regarding the 2019 mediations with ASO Subclass Counsel that predated the 2020 filing of the Fourth Amended Complaint. In light of those mediations, Judge Proctor asked, "[w]hen were Defendants notified of the ASOs' substantive claims and the number and generic identities of

the ASOs?" (Memorandum Opinion and Order, *Alaska Air*, 2023 WL 12166895, at *7 (N.D. Ala. Feb. 21, 2023), Dkt. 268) (citing *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 2021 WL 1909777, at *7 (D.D.C. May 12, 2021)). But under *American Pipe* and its progeny, the answers to those questions are determined by reference to the complaint. As a matter of law, Defendants were notified of the ASOs' claims and identities when ASO Plaintiffs became "asserted members of [a putative] class." *Am. Pipe*, 414 U.S. at 554; *see China Agritech*, 584 U.S. at 735; *supra* Section I.

Recognizing a lack of controlling Eleventh Circuit precedent, Judge Proctor suggested an openness to a different, "more functional" approach to the *American Pipe* tolling question by relying on a single unpublished, out-of-circuit, district court decision, *In re Rail Freight Fuel Surcharge Antitrust Litigation (No. II)*, 2021 WL 1909777, at *7. *See Alaska Air*, 2023 WL 12166895, at *6. But the *In re Rail Freight* decision addressed a different question altogether: not whether *plaintiffs* were within the class, but whether certain *claims* of plaintiffs (that indisputably were in the class) had a sufficient factual nexus to the class action. *In re Rail Freight (No. II)*, 2021 WL 1909777, at *7–8 ("tolling is . . . permitted only for allegations with a sufficient factual nexus to the conduct alleged" (internal quotation marks and citation omitted)). In fact, a more on-point decision in the *In re Rail Freight* litigation came after Judge Proctor's motion to dismiss decision,

and the same court looked to the allegations in the complaint. *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, No. 1:22-CV-02587, 2023 WL 4105105, at *7 (D.D.C. June 21, 2023) ("For a litigant to gain the benefit of *American Pipe* tolling, it generally must satisfy five prerequisites," including that "(2) the class action complaint must include the plaintiff within its asserted class.") Applying that rule here, the tolling date is November 2, 2020.

Moreover, the fact that ASOs participated in mediation before filing suit is legally irrelevant. Claims are not tolled by pre-suit settlement discussions. *See Spagnoli v. Medtronic Minimed, Inc.*, No. 07-22871-CIV, 2009 WL 10669108, at *6 (S.D. Fla. Mar. 10, 2009) ("[P]re-suit settlement discussions, standing-alone, will not affect the statute of limitations. . . ."); *Raziano v. United States*, 999 F.2d 1539, 1541 (11th Cir. 1993) (explaining that, "[i]n litigation between private parties, pre-suit negotiations to settle do not ordinarily estop a defendant from later asserting a limitations defense" and, as a result, "declin[ing] to extend equitable tolling to cover cases in which the government, because of pre-suit negotiations, knew about a claim that might be pursued against it in court").

Under the Supreme Court's precedents, it is the filing of a complaint that "suspends the applicable statute of limitations," and only "as to all *asserted members of the class*." *Am. Pipe*, 414 U.S. at 554 (emphasis added). Class action tolling does not retroactively bring in parties who were never putative class

members in the first place. *See*, *e.g.*, *Supreme Auto Transp.*, 902 F.3d at 742 (*American Pipe* tolling was not available "because the plaintiffs named in the amended complaint were not 'asserted members of the class' defined in the original complaint and their claims were not encompassed by the original suit"). If ASOs wanted to toll the statute of limitations during settlement negotiations, they should have filed a complaint or requested a tolling agreement. *Med. Admins. Sols. LLC v. Truist Bank, Inc.*, No. 1:23-CV-5120, 2024 WL 4525523, at *6 (N.D. Ga. June 3, 2024) (declining to toll claims during settlement negotiations where "[t]here was nothing to prevent Plaintiffs from timely filing their lawsuit during the pendency of negotiations or to seek an agreement from Defendants that would otherwise waive or extend the time for complying with the claims limitation period"). The fact that they did neither has consequences: their claims prior to November 2, 2016, are time-barred.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment for Defendants on all claims for damages based on alleged injuries occurring before November 2, 2016.

Dated: June 4, 2026

Respectfully submitted,

By /s/ Karin A. DeMasi

Karin A. DeMasi
Rachel G. Skaistis
Lauren R. Kennedy
David H. Korn
Lillian S. Grossbard
Rebecca J. Schindel
Hannah L. Dwyer
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 474-1000
Fax: (212) 474-3700
kdemasi@cravath.com
rskaistis@cravath.com
lkennedy@cravath.com
dkorn@cravath.com
lgrossbard@cravath.com
rschindel@cravath.com
hdwyer@cravath.com

*Lead Counsel for the Blue Cross Blue Shield System; Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of South Carolina; BlueCross BlueShield of Tennessee,*

*Inc.; Blue Cross Blue Shield of Wyoming; California Physicians' Service d/b/a Blue Shield of California; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.*

E. Desmond Hogan
Justin Bernick
Elizabeth Jose
W. David Maxwell
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555

Fax: (202) 637-5910
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabeth.jose@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho; Regence BlueCross BlueShield of Utah; Regence BlueShield; Regence BlueCross BlueShield of Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Arizona, Inc.; BlueCross BlueShield of South Carolina; Blue Cross and Blue Shield of Wyoming; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; California Physicians' Service d/b/a Blue Shield of California; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of*

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); BlueCross BlueShield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho; Regence BlueCross BlueShield of Utah; Regence BlueShield; Regence BlueCross BlueShield of Oregon; Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc; Defendants Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; BlueCross BlueShield of Tennessee, Inc.*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642

*Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

Carl S. Burkhalter
MAYNARD NEXSEN PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
cburkhalter@maynardnexsen.com

Pamela B. Slate
HILL CARTER FRANCO COLE & BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
jzeiger@kirkland.com

Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Blue Cross and Blue Shield of North Carolina; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho; Regence BlueCross BlueShield of Utah; Regence BlueShield; Regence BlueCross BlueShield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON
LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendant Premera Blue Cross, d/b/a Premera Blue Cross Blue*

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; Highmark Western and Northeastern New York Inc.; Blue Cross and Blue Shield of Kansas City (except with respect to claims by Rite Aid Corporation and its affiliates and Bed, Bath & Beyond Inc. now known as 20230930-DK-Butterfly-1, Inc. and its affiliates, and discovery to RTX Corporation and its affiliates and General Motors Company and its affiliates)*

Jonathan M. Redgrave
REDGRAVE, LLP
4800 Westfields Blvd, Suite 250
Chantilly, VA 20151
Tel: (703) 592-1155
Fax: (612) 332-8915

*Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX 75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL 36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.*

M. Patrick McDowell
Norman E. "Benje" Bailey, Jr.
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902
pmcdowell@brunini.com

jredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark Defendants and California Physicians' Service d/b/a Blue Shield of California*

Todd M. Stenerson
Brian C. Hauser
ALLEN OVERY SHEARMAN STERLING US LLP
1101 New York Avenue N.W.
Washington, DC 20005
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN STERLING US LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel: (214) 271-5777
Fax: (214) 271-5778
rachel.zieminski@aoshearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
Tel: (313) 259-7777
Fax: (734) 930-2494

bbailey@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF MISSISSIPPI, A MUTUAL INSURANCE COMPANY
P.O. Box 1043
Jackson, MS 39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company*

Alan D. Rutenberg
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
Tel: (202) 672-5491
Fax: (202) 672-5399
arutenberg@foley.com

*Counsel for Defendant USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield and as BlueAdvantage Administrators of Arkansas*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901

scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL 35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendants Blue Cross and Blue Shield of Michigan; Blue Cross and Blue Shield of Vermont; Independence Hospital Indemnity Plan, Inc. f/k/a Independence Blue Cross; Independence Health Group, Inc.*

Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Ave.
New York, NY 10001
Tel: (212) 223-4000
Fax: (212) 223-4134
sgilbert@crowell.com
hcostello@crowell.com

John M. Johnson

rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; BlueCross BlueShield of Tennessee, Inc.*

Edward S. Bloomberg
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Morris Wade Richardson
(ASB-8581-S78M)
Charles T. Grimes
(ASB-3224-S77C)
RICHARDSON CLEMENT PC
22 Inverness Center Parkway, Suite 500
Birmingham, Alabama
35242
Tel: (205) 729-7000
Facsimile: (205) 905-7009
wade@richardson.law
charley@richardson.law

*Counsel for Defendant Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield*

Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross and Blue Shield of Nebraska; GoodLife Partners, Inc.; Blue Cross of Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross Blue Shield of North Dakota; Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this the 4th day of June, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Karin A. DeMasi*
Karin A. DeMasi