FILED
2026 Jul-02 PM 01:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| Alaska Air Group, Inc., *et al.*,<br>Plaintiffs,<br>v.<br>Anthem, Inc., *et al.*,<br>Defendants. | No. 2:21-cv-01209-AMM |
| JetBlue Airways Corporation, *et al.*,<br>Plaintiffs,<br>v.<br>Anthem, Inc., *et al.*,<br>Defendants. | No. 2:22-cv-00558-AMM |
| Bed Bath & Beyond Inc., *et al.*,<br>Plaintiffs,<br>v.<br>Anthem, Inc., *et al.*,<br>Defendants. | No. 2:22-cv-01256-AMM<br><br>**ORAL ARGUMENT REQUESTED** |

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' STATUTE OF LIMITATIONS AFFIRMATIVE DEFENSE AND RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

*Filed Under Seal – Contains Information Designated Confidential Pursuant to Protective Order*

## TABLE OF CONTENTS

**I. Introduction** .......... 1

**II. Plaintiffs' Initial Statement of Undisputed Facts** .......... 2

**III. Response to Defendants' Statement of Facts** .......... 10

A. Response to Defendants' Factual Contentions .......... 10

B. Plaintiffs' Statement of Additional Facts .......... 12

**IV. Legal Discussion** .......... 15

A. The Antitrust Statute of Limitations and *American Pipe* Tolling .......... 15

B. Tolling Applies to the Cause of Action, Not to the Remedy Sought. .......... 16

C. *Cerven* Put Defendants on Notice of Plaintiffs' Sherman Act Claim. .......... 19

D. Defendants Cannot Now Claim Lack of Notice when Faced with Their Unequivocal Admissions. .......... 21

E. Courts Look to Extrinsic Evidence to Determine Whether a Plaintiff Falls Within the Class Definition. .......... 23

F. If a Plaintiff Is Not Unambiguously Excluded From the Class, Then It Is Entitled to *American Pipe* Tolling .......... 26

G. Defendants' Reliance on *Ford* and the Eleventh Circuit's Approval of the Class Settlement Agreement is Misplaced. .......... 27

H. Judicial Estoppel Supports Plaintiffs' *American Pipe* Analysis. .......... 30

**IV. Conclusion** .......... 34

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alaska Air Group, Inc. v. Anthem, Inc.*,
2023 WL 12166895 (N.D. Ala. Feb. 21, 2023) ....................................1, 16, 19, 23

*Alaska Air Group, Inc. v. Anthem, Inc.*,
2024 WL 347156 (N.D. Ala. Jan. 30, 2024) ..................................................3, 19

*Almaraz v. Haleas*,
2009 WL 10739926 (N.D. Ill. Sept. 1, 2009) ...................................................24

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974).........................................................................1, 16, 17, 29

*Barnebey v. E.F. Hutton*,
715 F. Supp. 1512 (M.D. Fla. 1989).................................................................18

*China Agritech, Inc. v. Resh*,
584 U.S. 732 (2018)...........................................................................................11

*Collins v. Dollar Tree Stores, Inc.*,
2010 WL 9499078 (E.D. Va. May 28, 2010)...............................................28, 29

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983)...............................................................................15, 16, 18

*DeFries v. Union Pac. R.R. Co.*,
104 F.4th 1091 (9th Cir. 2024)............................................ 21, 22, 25, 26, 30, 34

*DeGeer v. Union Pac. R.R. Co.*,
113 F.4th 1035 (8th Cir. 2024).....................................................................22, 26

*Ford Motor Co. v. BCBS of MI*,
2024 WL 1396264 (E.D. Mich. Mar. 30, 2024) ................................................28

*Griffin v. Singletary*,
17 F.3d 356 (11th Cir. 1994) ............................................................................16

*In re BCBS Antitrust Litig. MDL 2406*,
85 F.4th 1070 (11th Cir. 2023)....................11, 28, 29

*In re Indep. Serv. Org. Antitrust Litig.*,
1997 WL 161940 (D. Kan. Mar. 12, 1997)....................17

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
2020 WL 5016922 (D.D.C. Aug. 25, 2020)....................24

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
2023 WL 4105105 (D.D.C. June 21, 2023)....................24 n.6

*Jacoboni v. KPMG LLP*,
314 F. Supp. 2d 1172 (M.D. Fla. 2004)....................18

*Keathley v. Buddy Ayers Constr., Inc.*,
No. 25-6, 2026 WL 1686028 (U.S. June 11, 2026)....................31

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997)....................15, 16 n.5

*Kunstmann v. Aaron Rents, Inc.*,
2014 WL 1388387 (N.D. Ala. Apr. 9, 2014)....................34

*Liberty Mutual Mut. Ins. Co. v. Wetzel*,
424 U.S. 737 (1976)....................17

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
198 F.3d 823 (11th Cir. 1999)....................15 n.5

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................31

*Orbis Glob. Equity Le Fund v. Vale S.A.*,
2026 WL 670157 (E.D.N.Y. Mar. 10, 2026)....................18

*P&G v. Stone Container Corp.*,
504 F. Supp. 2d 38 (E.D. Pa. 2007)....................18, 24

*Slater v. United States Steel Corp.*,
871 F.3d 1174 (11th Cir. 2017) ....................................................................31, 34

*Smith v. Pennington*,
352 F.3d 884 (4th Cir. 2003)........................................................................23, 24

*Whitesell Corp. v. Electrolux Home Prods., Inc.*,
154 F.4th 1289 (11th Cir. 2025) .........................................................................33

*Zaragoza v. Union Pac. R.R. Co.*,
112 F.4th 313 (5th Cir. 2024) ..................................................................11, 22, 26

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
401 U.S. 321 (1971)...........................................................................................15

**Statutes and Rules** **Page(s)**

15 U.S.C. § 15(b) ..................................................................................................15

Fed. R. Civ. P. 15(c) .......................................................................11, 28, 29, 30

## ABBREVIATIONS

| Abbreviation | Reference |
| --- | --- |
| ASO | Administrative Services Only |
| ECF | All ECF references are to the *Alaska Air Grp., Inc. v. Anthem, Inc.*, No. 2:21-cv-01209-AMM (N.D. Ala. 2022) docket |
| PSOF | Plaintiffs' Initial Statement of Undisputed Facts |
| PSOAF | Plaintiffs' Statement of Additional Facts |

## I. Introduction

The parties agree that tolling under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), applies; they disagree on when it began. This Court has already held *American Pipe* tolling commenced when Defendants had notice of ASO claims. *Alaska Air Group, Inc. v. Anthem, Inc.*, 2023 WL 12166895, at *66 (N.D. Ala. Feb. 21, 2023) ("the real issue is not the allegations of the complaint, but rather the parameters of what the earlier class action gave Defendants notice about"). Without "anything in the Rule 56 file," however, the Court could not pinpoint that date, instructing the Parties instead "to bring the Rule 56 issue to me on the statute of limitations [SOL] issue[.]" ECF 755-68, 03/13/24 *Alaska Air* Tr. at 58:16-59:13.

Defendants' motion fails to provide any such facts. Indeed, Defendants do not even deny that the original *Cerven* class complaint put them on notice of the ASO claims. In light of their numerous statements to (1) this Court, (2) Plaintiffs, (3) the subscriber class, (4) their own liability carriers, (5) other courts, and (6) other self-funded accounts that they knew ASOs were always part of the subscriber class case, Defendants have chosen to ignore the critical issue.

Instead, Defendants recycle the legal argument this Court rejected at the Motion to Dismiss stage. Specifically, they argue the self-funded accounts were not included in the class definition because ASOs do not purchase "health insurance" and their members are not "insureds." But Defendants ignore the mountain of

admissible extrinsic evidence showing that Defendants themselves routinely use and understand the terms "health insurance" and "insured" to include ASO subscribers. Defendants also ignore that the *Cerven* class complaint alleged Defendants sell "health insurance" to approximately 100 million "insureds," more than half of whom (50 million plus) are ASO account members. All of this explains why Defendants' 2013 motion to dismiss the original consolidated class complaint flatly admitted that the Injunctive Relief Class "encompasses both large and small groups that self-insure." ECF 755-4, Defs. MTD FCC at 49.

Finally, as a matter of law, if there is any ambiguity as to whether ASOs were included in the original Injunctive Relief Class, then that ambiguity must be decided in favor of *American Pipe* tolling. That result is necessary to fulfill the judicial efficiency goals of *American Pipe* and avoid the pressure that would otherwise fall on claimants to file protective complaints. To prevail, Defendants must prove that ASOs were unambiguously excluded from the Injunctive Relief Class. They cannot.

## II. Plaintiffs' Initial Statement of Undisputed Facts

### *A. The Blues Are Sued in 2012 for Sherman Act Violations.*

1. *Cerven* was filed on Feb. 7, 2012. ECF 755-1, *Cerven* Compl.

2. *Cerven* alleged that the Blues restrained competition for all subscribers (*id.* at ¶¶ 114–122) and affected the prices paid for health care "services" (*id.* at ¶¶ 35, 113, 159.d, 189.d) covered by every Defendant, regardless of plan type. *Id.* at ¶¶ 118-120.

3. According to Defendants, Plaintiffs' Sherman Act claims "involve common questions of fact" and share "identical fact allegations" with the Sherman Act claim asserted in *Cerven*. ECF 755-28, Tag-Along Notice at 2; *see also* ECF 755-64, 02/25/22 Allied World Ltr. at 9 (Plaintiffs' actions here "[redacted]"); ECF 755-65, 03/28/23 Allied World Ltr. at 5 (same).

4. As this Court previously concluded, Plaintiffs herein have brought "virtually identical" litigation against the Blues. *Alaska Air Group, Inc. v. Anthem, Inc.*, 2024 WL 347156, at *2 (N.D. Ala. Jan. 30, 2024).

*B. Cerven Included an Injunctive Relief Class of 100 Million Insureds.*

5. *Cerven* alleged an Injunctive Relief Class composed of "[a]ll persons or entities…who are currently insured by any health insurance plan that is currently a party to a license agreement with BCBSA." ECF 755-1, *Cerven* Compl. at ¶ 20.

6. *Cerven* further alleged that Defendants "provide health insurance coverage" to "approximately **100 million – or one in three – Americans**." *Id.* at ¶ 15.[1]

7. Defendants thus described the Injunctive Relief Class as "possibly the largest

[1] Bolded text is added for emphasis throughout. The First Consolidated Class Action Complaint ("FCC"), filed on July 1, 2013, alleged the same Injunctive Relief Class as *Cerven*. ECF 755-3, FCC Compl. at ¶ 262. It also alleged that Defendants "provide health insurance coverage for approximately **100 million – or one in three – Americans**." *Id.* at ¶ 31. These allegations and class definitions were carried forward in subsequent amended complaints in the MDL. ECF 755-5, 1st Am. Sub. Compl. at ¶ 277 (2014); ECF 755-17, 2nd Am. Sub. Compl. at ¶ 306 (2016); ECF 755-20, 3rd Am. Sub. Compl. at ¶¶ 314, 315 (2017).

class action ever pursued," encompassing "roughly 100 million … proposed members of Subscriber Plaintiffs' injunctive class." ECF 755-9, Defs. MDL MTR at 1, 4. In Defendants' own words, these 100 million included "every Blue subscriber, big and small—**including ASO members**." ECF 755-45, Defs. Resp. to MTQ at 6.

8. As Defendants' counsel declared in court: "you've got a class of 100 million purchasers ranging from the **biggest national accounts** that purchase insurance down to the single individual[.]" ECF 755-8, 04/28/16 MDL Tr. at 61:08-16.

9. The *Cerven* allegation that Defendants provide health insurance to 100 million (or one-in-three) Americans cannot be mathematically reached, or even approached, without including ASO members as "insureds" covered by "health insurance"—as numerous Defendant witnesses confirmed under oath. ECF 755-62, Blue Profiles PPT 2019, at 5; ECF 755-16, MDL Defs. Rule 72 Brief at 1; ECF 755-76, Fringer Dep. at 27:14-28:06; ECF 755-69, Roberts Dep. at 55:05-55:24; ECF 755-75, Tauer Dep. 53:13-17; ECF 755-93, Muscatello Dep. at 36:11-37:05; ECF 755-47, 2006 BlueCard Brochure at '56; ECF 755-91, Roe Dep. Ex. 1031 at 2.

10. From 2012 to 2021, self-funded plans accounted for [redacted] of these 100 million Americans. *See* ECF 755-44, Blue Enrollment Chart.

*C. The Terms "Insured" and "Health Insurance" Include ASO Subscribers.*

11. Defendants define and understand the terms "insured" and "health insurance" to include both fully insured and "ASO products." ECF 755-82, Vidor Dep. at 34:25-

35:8 ("[redacted]"); ECF 755-84, Hedges Dep. at 115:14-116:16 (the Blues' claim that "[redacted]"); ECF 755-48, CBC Merger Testimony at 975, 996, 051 ([redacted]); ECF 755-93, Muscatello Dep. at 38:11-17 ([redacted]); *see also* ECF 755-73, Kovy Dep. at 18:05-13, 22:16-18; ECF 755-90, Roe Dep. at 47:17-20; ECF 755-59, Lagg Dep. at 153:04-14; ECF 755-77, Pierce Dep. at 25:14-17; ECF 755-92, Cardinal Dep. at 65:09-22; ECF 755-83, Donohue Dep. at 21:11-22:20; ECF 755-76, Fringer at Dep. 20:04-12; ECF 755-72, Kellogg Dep. at 19:06-09, 302:11-303:15; ECF 755-75, Tauer Dep. at 229:23-230:02; ECF 755-71, Larsen Dep. at 13:23-14:07; ECF 755-88, Innerst Dep. at 31:06-22; ECF 755-49, CBC Exam. Appx. A at 6.

12. Defendants' marketing materials refer to ASOs as "insureds" covered by "insurance." ECF 755-78, Pierce Dep. Ex 626 at 261 ("[redacted]"); ECF 755-86, Harris Dep. Ex. 890 at 6 ("[redacted]"); ECF 755-89, Hinds Dep. Ex. 1064 at 37 ("[redacted]"); ECF 755-87, Harris Dep. Ex. 891 at 8 (same); ECF 755-80,

Albano Dep. Ex. 726 at 15 (same).

13. Defendants continued using that definition in MDL discovery, defining "Commercial Health Insurance" in document requests to the subscriber class to include "administrative services, or any other mechanism for financing health care costs." ECF 755-7, Ex. D. PO Opp. Mtn. at 2.

*D. Defendants Admit That Cerven Put Them on Notice of the ASO Claims.*

14. Throughout the MDL, Defendants "[redacted]" ECF 755-81, Albano Dep. Ex. 727 at 3-4; ECF 755-51, Independence MDL R&O at 4; ECF 755-43, Timeline.

15. In moving to dismiss the FCC Complaint in 2013, Defendants stated that the subscriber class action "**encompasses both large and small groups that self-insure**." ECF 755-4, Defs. MTD FCC at 49;[2] *see also* ECF 755-2, *Cerven* MTD (seeking to dismiss "nationwide class" of all subscribers).

16. With each amended subscriber class complaint, Defendants again specifically acknowledged that they knew and understood that the Injunctive Relief Class included *all* Blue subscribers—both fully insured and ASOs. *See, e.g.,* ECF 755-45, Defs. Resp. to Class. Pls. MTQ at 6 (2017) ("The relief sought by the injunctive class

[2] When confronted with this admission, Defendants' counsel [redacted] ECF 755-66, 06/01/23 VHS Tr. at 38:9-17.

has nationwide implications that could impact **every Blue subscriber**, big and small—**including ASO members**."); ECF 755-21, Defs. Ans. to 3rd Am. Sub. Compl. at 111 (2017) ("BCBSA admits that Plaintiffs purport to bring an action seeking injunctive relief on behalf of a **nationwide class of Subscribers**").

17. Defendants told the MDL Court that, "in seeking injunctive relief," the class is "seeking to change the way the Blue system runs for everyone and the 103 million individuals who have Blue Cross Blue Shield." ECF 755-19, 01/24/17 MDL Tr. at 75:01-05. Again, the *only* way to get to 103 million individuals is to include ASOs.

18. Defendants did not mince words: everyone from small local accounts to "**global corporations with tens of thousands of employees … are members of the proposed classes.**" ECF 755-13, MDL Defs. Rule 72 Obj. at 5 (2016).

19. "Defendants subpoenaed (and the Court allowed) discovery from the ASO subscribers" on the basis that they were absent class members. ECF 755-45, Defs. Resp. to Class. Pls. MTQ at 6 (2017).

20. Defendants justified their ASO subpoenas as seeking "discovery from a small number of **putative class members** (less than one-half of one-millionth of the members of the proposed classes)[.]" ECF 755-9, Defs. MDL MTR at 1 (2016).

21. Defendants stated that the subpoenaed ASO subscribers "will automatically be included in the class if it is ever certified," and that "**they will not have to decide whether or not to opt out until that time**." *Id.* at 5 n.6.

22. Defendants stated to class counsel:

> Our targeted subpoenas seek to discover relevant facts about a cross-section of the putative classes. We believe this is particularly important in this case where **the alleged subscriber class ranges from individual subscribers to large national entities** . . . As we explained, plaintiffs' chosen class representatives do not fairly or accurately represent the diversity, scale and scope of these alleged classes . . . .

ECF 755-12, 04/13/16 Ltr. to Class Counsel at 2.

*E. Class Counsel Confirmed that ASOs Were In the Injunctive Relief Class.*

23. Class counsel agreed with Defendants that ASOs were class members. ECF 755-14, Sub. Pls. Opp. to Defs. Rule 72 Obj. at 9 (2016); ECF 755-10, Class Pls. MTQ at 1, 6-7 (2016). Class counsel stated that they represented subpoenaed ASOs *because* they were "class members." ECF 755-18, Class Pls. MTQ Reply at 1.

24. Class counsel wrote to the subpoenaed ASO subscribers to assure them that, "**[a]s counsel for a putative class of Subscribers, like you**, we have vigorously opposed the Blues' efforts to take discovery from you." ECF 755-15, 07/07/16 Class Counsel Ltr. to ASO Class Members at 14.

25. Throughout MDL discovery, both Defendants and class counsel continued to tell the Court that ASO subscribers were "**members of the proposed classes**." ECF 755-9, Defs. MDL MTR at 1 (2016); ECF 755-43, Timeline.

26. Dollar General is one of the ASO Plaintiffs herein. In moving for summary judgment in the MDL, Defendants stated that Dollar General was a member of the Injunctive Relief Class. ECF 755-22, Defs' MDL MSJ at ¶ 33 (2017). ("Dollar

General, a putative subscriber class member"). Class counsel agreed that Dollar General was a "class member." ECF 755-46, Sub. Opp. Memo MSJ at ¶ 33 (2018).

*F. Defendants Told Their Liability Carriers that ASOs were Class Members.*

27. Defendants advised their liability carriers that the ASOs were class members. *See, e.g.*, ECF 755-24, L. Goanos Exp. Rpt. at ¶ 24 (subscriber class includes "**self-insurance plans** underwritten and/or managed by the Blues") (2019).

28. When asked under oath "[redacted]" a Defendant's 30(b)(6) witness answered: "[redacted]" ECF 755-67, Wolfe Dep. at 219:04-16; *Id.* at 219:22-220:05 ("[redacted]")

29. Likewise, a Defendant's finance manager, Michael Mannella, stated in a sworn affidavit dated November 10, 2015, that the MDL subscriber track "relat[es] to claims asserted by individuals who are insured under plans issued **or administered** by a Blue Plan." ECF 755-52, M. Mannella Aff. at ¶ 9.

30. Another Defendant flatly stated in a court filing that the "*Alaska Air*" Plaintiffs in this action were among the "subscribers to the various Blue Plans" who were part of the MDL class action that was transferred to this Court "in July 2013." ECF 755-31, BCBSKS's *Allied World* Am. Ans. at ¶¶ 77, 88 (2025) (ASOs allege "the same or related facts" as the class action, including "that the Blues conspired to

allocate markets in violation of antitrust laws"); *see also* ECF 755-50, 7/30/12 Highmark Notice ([redacted]).

31. Given that Defendants and class counsel both stated that ASOs were included in the subscriber class action, it is unsurprising that the Blues' liability carriers also understood that the Injunctive Relief Class was "comprised of individual insureds **and self-funded plans**[.]" ECF 755-30, *Atlantic Specialty* MSJ at 1.

## III. Response to Defendants' Statement of Facts

### A. Response to Defendants' Factual Contentions

1-2; 4-8. Lack completeness. *See* PSOF ¶¶ 1-22, which more fully set forth the *Cerven* allegations and subsequent MDL complaints and proceedings.

3; 18-19. Disputed. *See* PSOF ¶¶ 11-22. After the Court entered a discovery order on March 19, 2024, pertaining to its understanding of when Defendants were put on notice of Plaintiffs' claims (ECF 427), Plaintiffs filed a motion for clarification to confirm that the Court had "not prejudged the fact issue of whether the statute of limitations commenced to run against Plaintiffs' claims prior to 2015, and that the issue must await discovery and Rule 56 motion practice, and perhaps trial." ECF 432 at 8-9. This Court granted Plaintiffs' motion for clarification. ECF 435, at 1 n.1. Likewise, in the MDL, although the Eleventh Circuit addressed an objection filed by an ASO subscriber (who did not opt out and is not a plaintiff here) to the amount of damages it was to receive under the subscriber class settlement, the Court's

consideration of the damages period did not even mention *American Pipe* tolling and was solely based on the relation back doctrine under Rule 15(c). *In re BCBS Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1096-98 (11th Cir. 2023). The Court actually found that the limited "record evidence" before it, which is a fraction of what is presented here, "could be read to suggest that Blue Cross had notice of the self-funded claimants' damages claims." *Id.* at 1097. And the Court acknowledged the uncertainty of the class definition. *Id.* (finding it "not clear from the *Cerven* complaint's definition of the injunctive class," and noting ambiguity between purchase of "full-service commercial health insurance" and "insurance").

9. Undisputed but incomplete. Class counsel filed a motion (which was never acted upon by the Court) that departed from the existing class definitions to include only Alabama fully insured residents and groups under 200 employees. While confirming ambiguity of the Injunctive Relief Class and reflecting a tactical decision made during final settlement talks on behalf of all subscribers, including ASOs, the motion did not halt *American Pipe* tolling. *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 318-19 (5th Cir. 2024) ("class definitions are not affected by intervening motions in a class action—even motions to certify a class"); *China Agritech, Inc. v. Resh*, 584 U.S. 732, 735 (2018) ("Under *American Pipe* tolling rule, 'a putative member of an uncertified class may wait until after the court rules on the certification motion to file an individual claim or move to intervene in the [existing] suit'").

10-11; 13, 20-21. Undisputed but incomplete. *See* PSOF ¶¶ 3-4, 21, 33-44. Several Defendants, some exclusively, also sold full insurance to Plaintiffs.

12 & 17. Disputed. *See* PSOF ¶¶ 3-31.

14-16. Disputed. *See* PSOF ¶¶ 23-26 (collecting class counsel representations that the Injunctive Relief Class included ASOs).

**B. Plaintiffs' Statement of Additional Facts**

32. Class counsel, including Mr. Boies, made numerous representations and filings throughout the MDL explicitly referring to ASOs as class members. *See, e.g.,* PSOF ¶¶ 23-26.

33. From the inception of settlement discussions in 2015, class counsel represented ASO subscribers as class members in negotiations with Defendants. *See, e.g.,* ECF 755-56, 05/11/17 ASO Mediation Demand at 166.

34. Negotiating relief for ASO class members and the corresponding release by the ASOs was the initial priority for Defendants and subscriber class counsel, as the "[redacted]" of the mediation that began in 2015 focused [redacted]" ECF 755-54, 04/14/17 Rule Dep. at 203:03-204:15.

35. It was during this [redacted] of mediation that Defendants attempted "[redacted]" *Id.* at 123:12-125:14; *see also id.* at 187:16-188:18, 191:24-192:25 (testifying that subscriber class action was

[redacted]).

36. Defendants have shielded discussions from 2015 regarding changes to the National Account Rules being negotiated and considered between themselves and class counsel. *See* ECF 755-94, 02/25/26 T. Scheetz Ltr.

37. This Court explained that only "after agreeing to structural relief" did Defendants and the class "address financial relief." ECF 755-29, Order at 3.

38. In July 2019, nearly a year and one half before the Fourth Amended Complaint was filed, class counsel asked Warren Burns "to serve as counsel for a sub-class of Self-Funded Accounts" so that damages could be allocated between fully insured and ASO class members. ECF 755-25, Burns Decl. at 303 ¶ 3. Mr. Burns agreed and, starting in September 2019, participated in the mediation sessions as counsel "to the putative Self-Funded Sub-Class." *Id.* at ¶¶ 3, 6.

39. In November 2019, a year before the Fourth Amended Complaint was filed, the parties to the class action (including the ASO subclass represented by Mr. Burns) "agreed on a term sheet" which "culminat[ed] in the final agreement." *Id.* at ¶ 8.

40. Prior to Mr. Burns acting on behalf of the ASOs, ASO class members were represented by class counsel. As class counsel detailed: "[G]oing back to the history, we got to the second Blue bid [*i.e.*, injunctive relief applicable only to ASOs] in part because national accounts, large national accounts, operated in more than one ESA. And the idea was that they should be able to go to any ESA in which they had

significant operations and get another Blue bid." ECF 755-26, Sub. Settlement Approval Tr. Vol. 1 at 129:07-15.

41. It was, in fact, ASO discovery obtained by class counsel from Defendants throughout the MDL that "went directly to the way [the class] approached the second Blue bid issue." ECF 755-27, Sub. Settlement Approval Tr. Vol. II at 115:16-21.[3]

42. Class counsel "creat[ed] the second Blue bid" to "provide a greater pressure on price and on services and innovation and on product offerings that otherwise did not exist in the market." *Id.* at 90:04-25. As Mr. Boies elaborated, "we wanted to secure additional Blue Bid[s] … for any large ASO that had employees dispersed among different states or regions." ECF 755-26, Sub. Settlement Approval Tr. Vol. I at 23:19-24:10. Charley Cooper reiterated Mr. Boies' sentiments about "how important that term [Second Blue Bid] was to us." *Id.* at 68:17-69:07.

43. The expert retained by the class counsel worked on the second Blue bid injunctive relief for the ASO subscriber class members. ECF 755-27, Sub. Settlement Approval Tr. Vol II at 91:13-24.

44. The metadata from Defendants' second Blue bid planning documents shows that this injunctive relief, which had no applicability to fully insureds or any

[3] Class counsel sought discovery of the "administrative services" that the Blues provided to ASO class members, ECF 755-6, Defs. Ex. B to Prop. Disc. Limits Mtn. at 2, including [redacted] ECF 755-60, 09/29/17 Class Pls. Ltr. at 534.

damages class, was negotiated [redacted]. ECF 755-74, Harbison Dep. Ex. 401 at 779 (Metadata for the presentation "[redacted]").

## IV. Legal Discussion

Defendants assert that Plaintiffs "can only recover" damages "dating back to November 2, 2016" – four years prior to the filing of the Fourth Amended Complaint. (MSJ, ECF 750 at 1). *American Pipe* tolling, however, is governed by when Defendants were put on notice of Plaintiffs' claim. Defendants cannot retreat from their numerous admissions that they always understood *Cerven* to include ASOs, and their motion must fail on that basis. *American Pipe* tolling began in 2012, and Plaintiffs' cross motion for summary judgment should be granted.[4]

### A. The Antitrust Statute of Limitations and *American Pipe* Tolling

Antitrust claims are governed by a four-year statute of limitations. 15 U.S.C. § 15(b). Added to this period is "any additional number of years during which the statute of limitations was tolled." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971).[5] Under *American Pipe*, "the commencement of a class action

---

[4] The first paragraph of Defendants' "Legal Standard" (ECF 750 at p.8) correctly states the standard for summary judgment.

[5] When defendants engage in ongoing price fixing, as Plaintiffs have alleged, and that conduct continues, as Defendants concede (ECF 289, BCBSA Ans. at 69 - acknowledging their conduct has continued "throughout this time"), then "each time a customer purchases that product at the artificially inflated price, an antitrust violation occurs and a cause of action accrues." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999) (citing *Klehr v. A.O. Smith*

suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554; *see also Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353-54 (1983); *Griffin v. Singletary,* 17 F.3d 356, 360 (11th Cir. 1994). The purpose of *American Pipe* tolling is to foster "efficiency and economy of litigation" by eliminating the need for putative class members to file their own complaints to preserve their claims. 414 U.S. at 553; *see also Crown*, 462 U.S. at 349.

The critical issue is whether the defendant was "fairly placed on notice by the class suit" of the plaintiffs' "claims." *Crown*, 462 U.S. at 355; *Alaska Air Group, Inc.*, 2023 WL 12166895 at *6 ("the real issue is not the allegations of the complaint, but rather the parameters of what the earlier class action gave Defendants' notice about"). The goal is to ensure that the defendant receives "the essential information necessary to determine both the subject matter and size of the prospective litigation." *Am. Pipe*., 414 U.S. at 555.

**B. Tolling Applies to the Cause of Action, Not to the Remedy Sought.**

The *Cerven* damages class included only health care plans with less than 200 members. Plaintiffs have never claimed to be members of that damages class.

---

*Corp.,* 521 U.S. 179, 189 (1997)). "As a cause of action accrues with each sale, the statute of limitations begins to run anew." *Id.*; *Klehr,* 521 U.S. at 189 (each payment by plaintiff "starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times") (*quoting* 2 Areeda, ¶ 338b, at 145). Accordingly, Plaintiffs are entitled to all overcharge damages incurred starting four years prior to the date on which tolling began.

Plaintiffs were, however, members of *Cerven*'s Injunctive Relief Class. As explained below, *American Pipe* tolls substantive legal claims. Once the claim is tolled, the plaintiffs can seek any remedy available for that violation.

Under *American Pipe*, a class complaint tolls the statute of limitations if it notifies defendants "of the substantive claims being brought against them." 414 U.S. at 555. The "substantive claims" are the legal causes of action that arise out of the facts, and they are not affected by the remedy or remedies sought by the class complaint. This is because a complaint which "pray[s] for several different types of relief" sets forth only a single claim. *Liberty Mutual Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 (1976). As the Supreme Court made clear, "a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief." *Id.* at 743 n.4; *see also In re Indep. Serv. Org. Antitrust Litig.*, 1997 WL 161940, at *5-6 (D. Kan. Mar. 12, 1997) (citing *Liberty Mutual* and stating that "courts traditionally have found that multiple remedies based on the same set of facts comprise a single cause of action or claim").

As a result, courts hold that where an opt-out plaintiff files the same substantive claim as previously asserted by a class complaint, the plaintiff is entitled "to take advantage of the [*American Pipe*] tolling rule" even if the class complaint sought a different remedy. *See id.* at *3, 5-6 (allowing *American Pipe* tolling because plaintiff asserted same claim as class "except for the relief requested"); *see*

*also P&G v. Stone Container Corp.*, 504 F. Supp. 2d 38, 47-48 (E.D. Pa. 2007) (claim tolled because it was same as class claim "except for the relief requested."). That is consistent with the principle that damages do not constitute a new claim, but rather an additional remedy for the same claim. *Jacoboni v. KPMG LLP*, 314 F. Supp. 2d 1172, 1186 (M.D. Fla. 2004) ("Typically, the law looks at a cause of action as a unit, encompassing all rights and remedies that may flow from a given set of circumstances."). In other words, it is irrelevant that Plaintiffs were included only in *Cerven*'s Injunctive Relief Class, because it is the *substantive claim* that is tolled.

This *American Pipe* jurisprudence aligns with the Eleventh Circuit's functional view of a "cause of action," such that an individual action need not be identical to a class's claims for *American Pipe* tolling to apply. Instead, tolling applies as long as a new claim involves the same "evidence, memories, and witnesses" as the class claim. *Barnebey v. E.F. Hutton*, 715 F. Supp. 1512, 1528-29 (M.D. Fla. 1989) (quoting *Crown*, 462 U.S. at 355); *Orbis Glob. Equity Le Fund v. Vale S.A.*, 2026 WL 670157, at *4 (E.D.N.Y. Mar. 10, 2026) (same). Defendants are on record that Plaintiffs' Sherman Act claims "involve common questions of fact" and share "identical fact allegations" with the Sherman Act claims asserted in *Cerven*. ECF 755-28, Tag-Along Notice at 2. Indeed, Defendants told the JPML and this Court that ASO subscriber opt-outs were pursuing "the same legal theories" as the subscriber class (*id.* at 8), and they successfully argued that transferring opt-out

actions to this Court was necessary to "prevent inconsistent pretrial rulings [based] on common questions of fact." (*id*. at 10; cleaned up). Additionally, this Court has already held that "[t]he claims asserted in the Opt Out Complaints are the same that were raised in the MDL" and constitute "nearly identical litigation." *Alaska Air Group, Inc.,* 2024 WL 347156, at *2.

Accordingly, as long as Defendants were on notice of Plaintiffs' claim—even if only in the context of injunctive relief—Plaintiffs' Sherman Act *claim* was tolled.

### C. *Cerven* Put Defendants on Notice of Plaintiffs' Sherman Act Claim.

As this Court has already explained, *American Pipe* tolling commenced when "defendants [were] notified of the ASOs' substantive claims and the number and generic identities of the ASOs[.]" *Alaska Air*, 2023 WL 12166895, at *7. In their opening brief, Defendants nowhere deny that *Cerven* put them on notice of either the ASOs' Sherman Act claim or the number and generic identities of the ASOs. Indeed, Defendants have consistently tried to dodge this issue by (1) refusing to produce documents relating to their notice, (2) refusing to designate 30(b)(6) witnesses to address their notice, and (3) having their lawyers instruct them not to answer deposition questions pertaining to their notice (*see infra* at pp. 31-32 and PSOAF ¶ 36). Nonetheless, Defendants' unequivocal admissions clearly establish that *Cerven* put them on notice of the ASOs' Sherman Act claim.

*Cerven*'s Injunctive Relief Class included all entities that were "insured" or

covered by any Blue "health insurance plan." PSOF ¶ 5. *Cerven* also alleged that Defendants "provide health insurance coverage for approximately 100 million …Americans" – a number which cannot be mathematically reached without including ASO plan members, as numerous Defendant witnesses confirmed. PSOF ¶¶ 6-10. Defendants, themselves, routinely refer to ASO covered lives as individuals they "insure" or who are covered by "health insurance" (PSOF ¶¶ 11-12), which is consistent with Defendants stating to the Court, *inter alia*, that the original Injunctive Relief Class included "every Blue subscriber, big and small – including ASO members" (PSOF ¶ 7), and that it was "possibly the largest class action ever pursued" encompassing "roughly 100 million … proposed members of the subscriber Plaintiffs' injunctive class." *Id.*

Due to the *Cerven* allegations and their own use of the terms "insured" and "health insurance," Defendants knew and understood perfectly well that ASOs were included in the Injunctive Relief Class. In 2013, Defendants moved to dismiss the consolidated complaint (which in all material respects was identical to *Cerven*) (PSOF ¶¶ 6 n.1, 15). Defendants told the Court that the subscriber class action "encompasses both large and small groups that self-insure." PSOF ¶ 15. Later, defense counsel admitted both that "[redacted]" (*id.* n.2), and that "the injunctive relief class … could impact **every Blue subscriber, big and small including ASO members.**" PSOF ¶ 16. Defendants told

this Court that, "in seeking injunctive relief," the subscriber class was "seeking to change the way the Blue system runs **for everyone and the 103 million individuals who have Blue Cross Blue Shield.**" PSOF ¶ 17. Defendants' own documents admit that, with regard to the subscriber class, they "[redacted]" PSOF ¶ 14. Defendants even explicitly identified Dollar General, one of the Opt-Out ASO plaintiffs herein, as "a putative subscriber class member" (PSOF ¶ 26), and when Defendants served subpoenas on certain ASOs, they explained that they were seeking "discovery from a small number of putative class members" and "members of the proposed class." PSOF ¶¶ 19-22. There is no dispute—and no reasonable basis to dispute—that Defendants, themselves, interpreted the Injunctive Relief Class to include ASOs.

### D. Defendants Cannot Now Claim Lack of Notice when Faced with Their Unequivocal Admissions.

Defendants have never denied under oath that they were put on notice of Plaintiffs' claims by the filing of the *Cerven* complaint. They can't: their outright admissions that they believed ASOs *were* part of the Injunctive Relief Class are dispositive of notice under *American Pipe*. In *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1108 n.6 (9th Cir. 2024), the Court relied on what the defendant "itself understood the class definition to include" as "strong evidence" that the class

definition did not "remove [the] plaintiffs from the class." This Court, like *DeFries*, may therefore "consider records from the class litigation to the extent that they illuminate" what Defendants "understood the class definition [to be]." *Id.* at 1107-08 (considering pleadings and materials filed by defendant to be dispositive).

Likewise, the Eighth Circuit held recently that a defendant's understanding of the class definition, as expressed in its prior court filings and statements, was sufficient to rebut any claim that the defendant lacked "notice of [the plaintiffs] and [their] claims." *DeGeer v. Union Pac. R.R. Co.*, 113 F.4th 1035, 1041 (8th Cir. 2024). Much as Defendants here have groused that the Injunctive Relief Class was "possibly the largest class actions ever pursued" (PSOF ¶ 7), including "every Blue subscriber, big and small—including ASO members" (*id.*) and "the biggest national accounts" (PSOF ¶ 8), the Court in *DeGeer* found dispositive the defendant's complaints that class was "sprawling" and "diverse." *DeGeer,* 113 F.4th at 1041. The Court rejected the defendant's attempt to escape its prior statements about a broad and expansive class through revisionist history resting on "subtle distinctions in language that are fodder for lawyers and quicksand for laymen." *Id.* at 1040.

Finally, the defendant in *Zaragoza*, like the Blues here, "consistently objected that th[e] class definition was overbroad." 112 F.4th at 320. Despite ambiguity in the class definition, the defendant "treated" the plaintiff as a class member. The Court explained: "That alone could, and perhaps should, end the inquiry." *Id.* at 321

& n.5 ("Union Pacific may well be estopped from discarding its previous representations of the *Harris* class's overbreadth to argue here that same class was narrow enough to have excluded Zaragoza."). As Defendants' (and class counsel's) statements about Dollar General and other ASOs confirm, the same is true here.

"Defendants bear the burden of establishing the applicability of a statute of limitations affirmative defense." *Alaska Air*, 2023 WL 12166895, at *5. Defendants cannot meet that burden. By their own (repeated) admissions, Defendants were on notice from the outset of ASO subscribers' claims, their number, and their generic identities when *Cerven* was filed. PSOF ¶¶ 7-8, 11-22, 25-31. As noted above, when Defendants moved in 2013 to dismiss the consolidated class complaint, they stated that they had been sued by an Injunctive Relief Class that "encompasses both large and small groups **that self-insure.**" ECF 755-4, Defs. MTD FCC at 49. Any contention by Defendants that they were not on notice of the ASO claims that they explicitly moved to dismiss is logically incoherent.

### E. Courts Look to Extrinsic Evidence to Determine Whether a Plaintiff Falls Within the Class Definition.

When deciding whether a plaintiff falls within the class definition for purposes of *American Pipe* tolling, courts look to extrinsic evidence from outside the face of the class complaint to determine whether the plaintiff was included in the putative class. In *Smith v. Pennington*, 352 F.3d 884 (4th Cir. 2003), the appellant asserted

*American Pipe* tolling. The court stated that the issue was whether it could "look beyond the complaint" to determine who was in the alleged class. The court held that it could: "We are not, however, confined to examine only the complaint in determining the scope of the class…." *Id.* at 893. The court thus held that the scope of an "asserted class for tolling purposes is that class for which there was 'fair notice' as to both the 'substantive claims' and the 'number and generic identities of the potential plaintiffs.'" *Id.* And the court explicitly held that, in determining whether that test was met, "we can consider evidence outside the complaint." *Id*; *see also In re Rail Freight Fuel Surcharge Antitrust Litig*., 2020 WL 5016922, at *11 (D.D.C. Aug. 25, 2020) (in determining whether plaintiff is entitled to *American Pipe* tolling, the courts may "go beyond the facts of the complaint[s]" and "'can consider evidence outside the complaint that demonstrates the extent of the class'");[6] *Almaraz v. Haleas*, 2009 WL 10739926 (N.D. Ill. Sept. 1, 2009) ("facts outside the complaint may be considered in determining the notice provided" by the allegations of the class complaint); *P&G*, 504 F. Supp. 2d at 48 ("The Court is not 'confined to examine only the complaint in determining the scope of a plaintiffs asserted class for tolling

[6] Contrary to Defendants' suggestion, the *Rail Freight* court did not disturb this holding in its 2023 decision. ECF 750 at 16-17. Instead, it criticized the defendants there for their "novel" and "nebulous" position that "mischaracterize[d]" prior cases. *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 2023 WL 4105105, at *6, *8 (D.D.C. June 21, 2023) (further holding that defendants there, like Defendants here, "incorrectly assume that because *American Pipe* tolling is an equitable doctrine, the requirements of the more generally-applied equitable tolling doctrine must be imported into the former's analysis"). The same could be said of Defendants here.

purposes' … the Court may also 'consider evidence outside of the complaint that demonstrates the extent of the class….'").

The holding in *Smith* was followed in *DeFries*, 104 F.4th 1091. There, the court looked to the statements, pleadings, declarations, briefs and depositions of the parties to the class litigation to determine whether they believed the class definition included the plaintiff who was asserting *American Pipe* tolling. *Id*. at 1108-09. The court held that the "extratextual evidence" showed that class counsel did not believe that plaintiff was excluded from the class definition, and that "even the [defendant] itself understood the class definition to include [the *American Pipe* claimants]." *Id*. at 1108, n.6. The court held that the extrinsic evidence from outside the complaint supported its conclusion that the plaintiffs were entitled to *American Pipe* tolling. *Id*. at 1109. Here, both class counsel *and* Defendants understood and stated repeatedly that the Injunctive Relief Class definition included ASOs. PSOF ¶¶ 7-8, 14-26. That is strong extrinsic evidence that the *Cerven* class definition included ASOs. The other extrinsic evidence confirms that Defendants routinely refer to ASOs as "insureds," including when they state that they "insure" 100 million Americans—a figure that necessarily includes ASO members. PSOF ¶¶ 6–10. Thus, the record evidence establishes beyond any doubt that ASOs were in the *Cerven* Injunctive Relief Class. At a minimum, that evidence clearly demonstrates that the class definition is ambiguous. As explained below, that is all Plaintiffs need show

to receive *American Pipe* tolling.

### F. If a Plaintiff Is Not Unambiguously Excluded From the Class, Then It Is Entitled to *American Pipe* Tolling.

It is not necessary for a plaintiff to persuade the court that it was included in a class definition to be entitled *American Pipe* tolling. Instead, plaintiffs need only show that the class definition is ambiguous and arguably includes them. For example, the *DeFries* court held that where the meaning of the class definition "is disputed and ambiguous," any "ambiguity about the scope of the putative class … should be resolved in favor of tolling." 104 F.4th at 1095. The court explained that, "[w]here the scope of the class definition in an initial complaint 'arguably' includes pertinent or bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them." *Id.* at 1099; *see also DeGeer*, 113 F.4th at 1039, 1040-41 (holding that "[w]e need not decide who has the right of the argument. What matters is the 'genuine ambiguity' in the [class] definition's scope"; that "ambiguities are resolved in favor of applying *American Pipe* tolling"; and that a litigant is deemed to be within the class definition unless "unambiguously exclude[d]" from it); *Zaragoza*, 112 F.4th at 322 ("At least, given the record before us, Zaragoza was not '*unambiguously excluded*' from the [class definition]. Thus, Zaragoza's claims were tolled during the pendency of the

*Harris* certified class.").[7]

Here, the *Cerven* Injunctive Relief Class includes any American "insured by any [Blue] health insurance plan" while alleging that the Blues insure 100 million such Americans. PSOF ¶¶ 5-6. At most, Defendants' arguments about these allegations highlight a latent ambiguity regarding the meaning of the term "insured." The undisputed extrinsic evidence shows that the count of 100 million insured Americans necessarily includes ASO covered lives; that Defendants use and understand the terms "insured" and "health insurance" to include ASOs; and that Defendants believed that ASOs were in the defined Injunctive Relief Class. PSOF ¶¶ 6-26. In light of these undisputed facts, and as a matter of law, it cannot be said that ASOs were unambiguously excluded from the Injunctive Relief Class. At most, Defendants' arguments about *Cerven*'s allegations and class definition establish an ambiguity in the class definition. That ambiguity must be resolved in favor of *American Pipe* tolling.

### G. Defendants' Reliance on *Ford* and the Eleventh Circuit's Approval of the Class Settlement Agreement is Misplaced.

Defendants suggest that the analysis of whether a plaintiff falls within a class definition for purposes of *American Pipe* tolling is confined to the face of the complaint. ECF 750 at 11-14, 16 (the issue is "determined by reference to the

[7] Defendants themselves asserted in the MDL that "the term 'Subscriber' [redacted]." *E.g.*, ECF 755-53, MDL Cambia A&O at 758.

complaint"). Ignoring all the evidence, Defendants argue simply that the class definition includes those who are "insured" by Defendants, but the ASOs self-insure. *Id*. In support of this argument, Defendants rely on *Ford,* but the district court there *did not* address whether ASOs were included in the *Cerven* Injunctive Relief Class—only whether the Ford health plan, which contracted with BCBS of Michigan, was included in the *Cerven damages* class, which was limited to entities that "paid health insurance premiums to BCBS-NC for individual or small group full-service commercial health insurance." *Ford Motor Co. v. BCBS of MI*, 2024 WL 1396264, at *9 (E.D. Mich. Mar. 30, 2024).

Defendants next invoke the Eleventh Circuit's approval of the Subscriber Class Settlement. That decision, however, does not even mention, let alone analyze or decide, *American Pipe* tolling. *In re BCBS Antitrust Litig*., 85 F.4th 1070. Instead, it addresses the objection of a self-funded damages class member who did not opt out of the class settlement and argued that it did not receive a fair amount of the class recovery. The issue considered was whether the Fourth Amended Complaint related back to the *Cerven* complaint under FRCP 15(c). *Id*. at 1097.

Relation back under Rule 15(c) is dependent on what is set forth on the face of "the original pleading." Fed. R. Civ. P. 15(c)(1)(B). It is unlike *American Pipe* tolling, which is an equitable doctrine focused on defendants' awareness of the claim. *American Pipe*, 441 U.S. at 554-55; *Collins v. Dollar Tree Stores, Inc*., 2010

WL 9499078, at *7 (E.D. Va. May 28, 2010) (distinguishing relation back under Rule 15 from *American Pipe* tolling). In devising the *American Pipe* doctrine, the Supreme Court neither relied upon nor even mentioned the strictures of Rule 15(c). Instead, it analogized class action tolling to Section 5(b) of the Clayton Act, which automatically tolls limitations for all private plaintiffs as to matters addressed by a government enforcement action. *American Pipe,* 414 U.S. at 561.

*American Pipe* tolling was never mentioned by the Eleventh Circuit in its approval of the Subscriber Class Settlement. With regard to the damages class, the Court denied the objector Rule 15(c) relation back because the damages class applied only to people who "have paid health insurance premiums." *In re BCBS Antitrust Litig*., 85 F.4th at 1097. That objector was differently situated from Plaintiffs herein, who have brought opt-out suits pursuant to *American Pipe* and have not relied upon relation back under Rule 15(c).

With regard to the Injunctive Relief Class, and contrary to Defendants' implication, the Court *did not* hold that ASOs could not be included in that class. To the contrary, based on the sparse factual record before it (in which *American Pipe* was not at issue), the Court held only that "[i]t is not clear from the *Cerven* complaint's definition of the injunctive class that self-funded accounts are included because they are not necessarily 'insured by any health insurance plan.'" *In re BCBS Antitrust Litig*., 85 F.4th at 1097. As a result, the Eleventh Circuit held that "the

district court did not abuse its discretion in ruling that the self-funded claimants request for damages did not relate back [under Rule 15(c)] to the *Cerven* complaint." *Id*. at 1098. The result, however, would have been very different if the question before the Court had called for the application of *American Pipe* tolling rather than relation back under Rule 15(c). Even on the basis of the limited facts available to the objector, the Eleventh Circuit held that there was "record evidence that could be read to suggest that Blue Cross had notice of the self-funded claimants' damages claims." *Id*. at 1097. The Court's finding that there was at least some evidence to find Defendants were on notice of ASO claims necessarily means that whether ASOs were included within the *Cerven* Injunctive Relief Class is, at the least, ambiguous.

Defendants' statements about both the inclusion of ASO subscribers in the class, and their own usage of the term "insured" to include ASO subscribers, likewise reflect, at a minimum, "genuine ambiguity in the scope of the [] class definition" in *Cerven*. *DeFries*, 104 F.4th at 1107. Defendants' decade-long position that the Injunctive Relief Class included ASOs establishes that Plaintiffs were not "unambiguously excluded" from the Injunctive Relief Class, thus warranting *American* Pipe tolling.

**H. Judicial Estoppel Supports Plaintiffs' *American Pipe* Analysis.**

In the Eleventh Circuit, a "party should not be allowed to gain an advantage by litigation on one theory and then seek an inconsistent advantage by pursuing an

incompatible theory" or by advancing an inconsistent position and causing a court to adopt it. *Slater v. United States Steel Corp.,* 871 F.3d 1174, 1181 (11th Cir. 2017) (cleaned up). "Judicial estoppel is an 'equitable doctrine' intended 'to protect the integrity of the judicial process,' both by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,' and by preventing the 'risk of inconsistent court determinations.'" *Keathley v. Buddy Ayers Constr., Inc.*, No. 25-6, 2026 WL 1686028, at *4 (U.S. June 11, 2026) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001)).

For over a decade, Defendants represented to this Court that the Injunctive Relief Class included ASO subscribers. They did so in their motions to dismiss and for summary judgment. PSOF ¶¶ 15, 26. They did so in their discovery motions. PSOF ¶¶ 18-25. They did so in oral arguments to this Court. PSOF ¶ 17. They did so in litigation with their liability carriers. PSOF ¶¶ 27-31. Indeed, they did so in obtaining a release and other consideration from ASOs as part of the subscriber class settlement agreement, PSOAF ¶¶ 33-44, which Defendants have now used to insulate themselves from certain discovery in this case. ECF 754 (6/29/26 Order).

Defendants benefited from their prior position that ASOs were in the class. They successfully moved for discovery of ASOs as class members. PSOF ¶¶ 19-22. Defendants utilized their expansive definition of the Injunctive Relief Class to resolve ASO claims through the class action vehicle from early in the class case.

PSOAF ¶¶ 33-44.[8] Class counsel also viewed ASO injunctive relief as necessary to "provide a greater pressure on price and on services and innovation" to benefit the whole market. PSOAF ¶ 42. Class counsel made plain that they represented the interests of ASOs in injunctive relief settlement talks long before the Fourth Amended Complaint was filed. PSOAF ¶¶ 33-43. The negotiation of such ASO relief, and the corresponding release of ASO claims, was the initial priority for Defendants and class counsel as the "[redacted]" of the mediation, which began in 2015 and focused "[redacted]." PSOAF ¶ 34. It was then—more than ten years ago—that Defendants attempted "[redacted]," which is relevant only to ASOs, and Defendant [redacted][.]" PSOAF ¶ 35.[9] As this Court has explained, only "after agreeing to structural relief" did Defendants and the class "address financial relief." PSOAF ¶ 37.

Defendants cannot now change their tune, especially after Defendants

---

[8] Defendants assert that ASO participation in mediation "is legally irrelevant," but rely on inapposite cases (*Spagnoli, Raziano & Truist Bank*) that nowhere discuss *American Pipe* tolling or judicial estoppel and instead discuss Florida or Georgia state law on equitable tolling.

[9] As Cigna learned during its due diligence in anticipation of merging with Anthem, "the general counsels of the BCBSA licensees are working together to develop a settlement proposal by the end of the year in hopes of settling with the plaintiffs by June/July 2015." ECF 755-23, Providers' Anthem Cigna Notice at 7. Given DOJ's concern about the competitiveness of the national account market, ECF 755-55, 04/28/17 Rule Dep. at 439:08-441:21, Anthem [redacted] *Id.* at 501:21-503:10, 508:16-510:16; *see also* ECF 755-61, Rosen Dep. at 418:14-420:05.

repeatedly (and improperly) instructed their witnesses not to answer deposition questions about their notice. *See, e.g.,* ECF 755-76, Fringer Dep. at 331:09-332:08; ECF 755-70, 02/11/25 Korn Ltr. at 3 ("[redacted]"); ECF 755-85, Harris Dep. at 12:10-13:07; ECF 755-79, Hudson Dep. at 176:15-177:07; RFP No. 8 in ECF 755-36, Elevance R&O; ECF 755-38, HCSC R&O; ECF 755-33, BCBSMI R&O; ECF 755-37, FL Blue R&O; ECF 755-39, Highmark R&O; ECF 755-41, Premera R&O; ECF 755-35, Cambia R&O; ECF 755-34, BCBSMN R&O; ECF 755-40, Horizon R&O; ECF 755-42, Wellmark R&O. Principles of judicial estoppel and Rule 37 case law bar Defendants from retracting their decade-long history of representations regarding the scope of the Injunctive Relief Class. *See Whitesell Corp. v. Electrolux Home Prods., Inc.*, 154 F.4th 1289, 1299 (11th Cir. 2025) (Rule 37(c) prohibits a party from presenting new information on which it refused to engage in discovery).

Accordingly—and *after* telling this Court that the Injunctive Relief Class included ASOs and leveraging their inclusion to negotiate a global settlement with ASOs, which Defendants have leveraged in these cases—Defendants are judicially estopped from claiming that ASOs were only later added to the class case in 2020, mere minutes before the *previously* signed settlement agreement and hundreds of

pages of supporting papers were filed (MDL ECF 2610). For the same reasons that, "by opting in to a class action case, a plaintiff is taking a sworn position that potentially subjects him or her to the doctrine of judicial estoppel," so too Defendants are subject to judicial estoppel when taking a position on class definition. *Kunstmann v. Aaron Rents, Inc.*, 2014 WL 1388387, at *6 (N.D. Ala. Apr. 9, 2014).

Plaintiffs need not, however, rely on judicial estoppel to prevail. The *American Pipe* tolling analysis only points one way. Resolving an "ambiguity about the scope of a putative or certified class … in favor of tolling," as the law requires, ends the analysis, though the judicial estoppel parallels are clear. *DeFries*, 104 F.4th 1095 & 1108 n.6 (although "[plaintiff] did not raise judicial estoppel expressly," the court noted it could consider the argument at its discretion but did not need to do so due to *American Pipe*). The two doctrines go together: parties cannot "deliberately chang[e] positions according to the exigencies of the moment" to game the judicial system. *Slater*, 871 F.3d 1180. For this reason, this Court should view Defendants' attempted about-face "according to the exigencies of the moment" with the skepticism it merits; reject, as a matter of law, Defendants' statute of limitations affirmative defense; and grant summary judgment in favor of Plaintiffs.

**IV. Conclusion**

Defendants have not marshaled the facts necessary to sustain their statute of limitations affirmative defense and bar all Plaintiffs' damages prior to November 2,

2016, and they cannot do so. Defendants' papers fail to answer key questions: Do Defendants deny they were on notice of ASO subscriber claims? How do Defendants explain their numerous statements to this Court, and to ASO themselves, that ASOs *were* part of the class? And how could subscriber class counsel negotiate a settlement of ASO subscriber claims without ASO subscribers being part of the class?

Defendants' own words and deeds belie any purported lack of notice. Defendants concede that they understood the 2012 *Cerven* action to allege "the largest class actions ever pursued," encompassing "roughly 100 million … proposed members of Subscriber Plaintiffs' injunctive class," PSOF ¶ 7, that included "every Blue subscriber, big and small—including ASO members," *id.*, "ranging from the biggest national accounts," PSOF ¶ 8, and *expressly <u>including</u> Plaintiffs here* as "putative subscriber class member[s]," PSOF ¶ 26. As Defendants admit, Plaintiffs' Sherman Act claims "involve[] common questions of fact" and share "identical fact allegations" with the Sherman Act claim asserted by the subscriber class. ECF 755-28, Tag-Along Notice at 2. Defendants did not and cannot prove lack of notice prior to November 2, 2020 to limit Plaintiffs' damages. The Court therefore should deny summary judgment to Defendants and grant Plaintiffs summary judgment on Defendants' statute of limitations affirmative defense.

Dated: July 2, 2026

Respectfully submitted,

By: */s/ Benjamin T. Presley*

Jay M. Ezelle
H. Thomas Wells, III
Benjamin T. Presley
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
Tel: (205) 868-6000
Email: jezelle@starneslaw.com
twells@starneslaw.com
bpresley@starneslaw.com

*Counsel for all Plaintiffs in the Alaska Air and JetBlue cases*

By: */s/ Phillip F. Cramer*

Phillip F. Cramer
Katherine T. Drummonds
W. Campbell Haynes
SPERLING KENNY NACHWALTER, LLC
1221 Broadway, Suite 2140
Nashville, TN 37212
(312) 641-3200
Fax: (312) 641-6492
Email: pcramer@sperlingkenny.com

By: */s/ Paul E. Slater*

Paul E. Slater
Joseph M. Vanek
David P. Germaine
Eamon P. Kelly
Trevor K. Scheetz
Martin V. Sinclair, Jr.

SPERLING KENNY NACHWALTER, LLC
321 N. Clark St., 25th Floor
Chicago, Illinois 60654
Tel: (312) 641-3200
Email: pes@sperlingkenny.com
jvanek@sperlingkenny.com
dgermaine@sperlingkenny.com
ekelly@sperlingkenny.com
tscheetz@sperlingkenny.com
mvs@sperlingkenny.com

By: */s/ William J. Blechman*

William J. Blechman
Joshua B. Gray
Elizabeth B. Honkonen
SPERLING KENNY NACHWALTER, LLC
Four Seasons Tower - Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email: wjb@sperlingkenny.com
jgray@sperlingkenny.com
ebh@sperlingkenny.com

*Counsel for All Plaintiffs in the Alaska Air and JetBlue Actions (except for BNSF Plaintiffs)*

By: */s/ J. Scott Hickman*

J. Scott Hickman
Eric G. Osborne
Micah N. Bradley
L. Webb Campbell
Christopher C. Sabis
Rascoe Dean
SHERRARD ROE VOIGT & HARBISON, PLC
1600 West End Avenue, Suite 1750

Nashville, TN 37203
Tel: (615) 742-4200
Fax: (615) 742-4539
Email: shickman@srvhlaw.com
eosborne@srvhlaw.com
mbradley@srvhlaw.com
wcampbell@srvhlaw.com
csabis@srvhlaw.com
rdean@srvhlaw.com

*Counsel for The Kraft Heinz Company, Kraft Heinz Group Benefits Plan, Kraft Heinz Retiree Group Benefits Plan, and North Central States Regional Council of Carpenters' Health Fund*

*Counsel for The Boeing Company; Employee Benefits Plan Committee of The Boeing Company, as the plan administrator and named fiduciary of The Boeing Company Master Welfare Benefit Plan; Bridgestone Americas, Inc.; Bridgestone Americas, Inc. Employee Group Insurance Plan; Bridgestone Americas, Inc. Retiree Medical Plan; Dollar General Corporation; Dollar General Health Plan (a component of the Dollar General Corporation Employee Benefits Plan); The Federal Express Corporation; FedEx Freight, Inc.; The Federal Express Corporation Group Health Plan; The FedEx Corporation Group Health Plan; FedEx Corporation Retiree Group Health Plan; The Federal Express Corporation Retiree Group Health Plan; The Federal Express Corporation Group Health Plan for Pilots; The Federal Express Corporation Retiree Group Health Plan for Pilots; FedEx Group Health Plan; Tractor*

*Supply Company; Tractor Supply Medical Plan*

By: */s/ Jason A. Zweig*
Jason A. Zweig
BARTKO PAVIA LLP
1 South Wacker Drive
36th Floor
Chicago, IL 60606
Tel: (415) 956-1900
Fax: (415) 956-1152
Email: jzweig@bartkopavia.com

*Counsel for JetBlue Airways Corporation and JetBlue Airways Group Health Insurance Plan, McLane Foodservice Distribution, Inc., and Employee Benefits Plan of MBM Corporation*

*Counsel for Alaska Airlines, Inc.; Alaska Airlines, Inc. Welfare Benefit Plan; Alaska Air Group, Inc.; Alaska Air Group, Inc. Welfare Benefit Plan; Horizon Air Industries, Inc.; Horizon Air Industries, Inc. Welfare Benefit Plan; Employee Benefit Plan for Employees of Horizon Air Industries, Inc.; Employee Benefit Plan for Full-Time and Part-Time Employees Horizon Air Industries, Inc.; American Electric Power Service Corporation; American Electric Power System Comprehensive Medical Plan; Big Lots, Inc.; Big Lots Associate Benefit Plan; Burlington Northern Santa Fe LLC (f/k/a Burlington Northern Santa Fe Corp.); Burlington Northern Santa Fe Corporation Group Benefits Plan; Burlington Northern Santa Fe Corporation Welfare Benefit Trust; FedEx Corporation; The Federal Express*

*Corporation; FedEx Freight, Inc.; The Federal Express Corporation Group Health Plan; The FedEx Corporation Group Health Plan; FedEx Corporation Retiree Group Health Plan; The Federal Express Corporation Retiree Group Health Plan; The Federal Express Corporation Group Health Plan for Pilots; The Federal Express Corporation Retiree Group Health Plan for Pilots; FedEx Group Health Plan; McLane Company, Inc.; McLane Company, Inc. Welfare Plan; Employee Benefits Plan of MBM Corporation; and the MBM Corporation*

By: */s/ Jon Corey*

Jon Corey
MCKOOL SMITH, PC
1999 K Street, NW
Suite 600
Washington, D.C. 20006
(202) 370-8300
jcorey@mckoolsmith.com

John Briody
James Smith
David Schiefelbein
Daniel Hendler
MCKOOL SMITH, PC
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
(212) 402-9400
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com
dschiefelbein@mckoolsmith.com
dhendler@mckoolsmith.com

Lew LeClair
Gary Cruciani
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000
lleclair@mckoolsmith.com
gcruciani@mckoolsmith.com

By: */s/ Brenton K. Morris*
Brenton K. Morris
BENTON, CENTENO & MORRIS, LLP
2019 Third Avenue North
Birmingham, Alabama 35203
(205)-278-8000
bmorris@bcattys.com

*Counsel for Bed, Bath & Beyond Inc. now known as 20230930-DK-Butterfly-1, Inc.; Automobile Club of Southern California; Darling Ingredients Inc.; Griffin Industries, LLC; Dillard's, Inc.; Halliburton Energy Services, Inc.; G4S Secure Solutions (USA), Inc.; Kimberly-Clark Corporation; Lincoln National Corporation; Live Nation Entertainment, Inc.; Nestlé USA, Inc.; Perdue Farms Inc.; Pacific Gas and Electric Company; PG&E Corporation; RTX Corporation; Raytheon Company; Rockwell Collins, Inc.; Rite Aid Corporation; Rite Aid Hdqtrs. Corp.; Sterling Jewelers Inc.; Zale Corporation; Zale Delaware, Inc.; Starbucks Corporation; Tyson Foods, Inc.; SRZ Liquidating Trust; Transform Midco LLC; and General Motors LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of July, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all Counsel of record.

By: */s/ Benjamin T. Presley*
Benjamin T. Presley